### DOWNING & Co. *v.* UNITED STATES (No. 1555).[1]

1. JACQUARD FIGURED UPHOLSTERY.

By the provision for "Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing in the piece or otherwise," paragraph 258, tariff act of 1913, Congress intended to make the use of this narrowly prescribed goods the test of classification and to include therewithin all such goods for dutiable purposes and to invade the other paragraphs of the tariff act, including within this provision for dutiable purposes all goods answering to this description.

2. SPECIFICITY.

The relative specificity of competing provisions of the tariff law is not always controlling of decision.

United States Court of Customs Appeals, December 6, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7660 (T. D. 35047) and Abstract 37302.

[Reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal brings here for decision the proper classification of certain cotton covers. They were classified for dutiable purposes by the collector of customs at the port of New York as "articles made or cut from plushes, velvets," etc., under the provisions of paragraph 257 of the tariff act of 1913. The claims relied upon by the importers at the hearing before the Board of General Appraisers were diverse as to the different imported articles. One of the samples has the appearance of, and is concededly, a small table cover. The other is larger in size, obviously representative of a completed article made up ready for use, and of an appropriate size for rugs. It, however, is lighter in weight than is a rug ordinarily and contains no fringe at the ends. The former was conceded by the importer not to be a rug, but the latter was claimed by them such. That claim was overruled by the Board of General Appraisers and is reasserted in this court. Accordingly it is claimed here as to the latter article that it is dutiable as "rugs of cotton" under the provisions of paragraph·

----

[1] Reported in T. D. 35984 (29 Treas. Dec., 731).

302 of said act. The alternative claim is made as to that article and is also extended to the remaining goods of the importation, that they are dutiable as "Jacquard figured upholstery goods" under the provisions of paragraph 258 of the act. The provisions in order may be quoted as follows: .

257. Plushes, velvets, plush or velvet ribbons, velveteens, corduroys, and all pile fabrics, cut or uncut, whether or not the pile covers the entire surface; any of the foregoing composed wholly or in chief value of cotton or other vegetable fiber, except flax, hemp, or ramie; and manufactures or articles in any form, including such as are commonly known as bias dress facings or skirt bindings, made or cut from plushes, velvets, velveteens, corduroys, or other pile fabrics composed of cotton or other vegetable fiber, except flax, hemp, or ramie, 40 per centum ad valorem.

302. Carpets and carpeting of wool or cotton, or composed in part of either of them, not specially provided for in this section, and on mats, matting, and rugs of cotton, 20 per centum ad valorem.

258. Curtains, table covers, and all articles manufactured of cotton chenille, or of which cotton chenille is the component material of chief value, tapestries, and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing, in the piece or otherwise, 35 per centum ad valorem; all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value, 30 per centum ad valorem.

Primarily it may be said that as to the claim of the importers that said part of the merchandise was dutiable as "rugs of cotton," the Board of General Appraisers overruled this contention, and that no assignment of error is had as to their action in that particular. The pertinent testimony was to the effect, and that result is shown by the testimony of the importer himself, that these articles, when sold in the retail trade as rugs, have proven unsatisfactory, that they are so light that they are easily worn and so crumple and roll under the feet as to be entirely unsatisfactory and unfit for use as such. Upon this state of facts we think the conclusion of the board that they were not ratable for duty as rugs of cotton sound upon the merits.

The Board of General Appraisers also overruled the alternative claim of the importers that the merchandise was properly ratable for duty as "Jacquard figured upholstery goods" under the provisions of paragraph 258. The board was partially moved to this conclusion, as its opinion indicates, and as the counsel for the Government contends in this court, by its decision in G. A. 7472 (T. D. 33577). That decision was under the tariff act of 1909. It is strongly urged by the Government in this court that said decision is *stare decisis* here, in that, having been rendered prior to the enactment of the tariff act of 1913 upon claimed identical subject matter and the pertinent paragraph having been reenacted in the precise words of its ancestral legislation, there was thereby a legislative classification of the merchandise. Conceding on a proper state of facts that·

such would have been true, there is absent in this particular another essential. In the case relied upon, which arose under the tariff act of 1909, though Jacquard figured upholstery goods were provided for in that act by paragraph 326, the point was not raised or decided in that case whether or not the goods were dutiable as such thereunder. We do not think, in that view, legislative classification can be claimed. It was no more than tantamount to holding that the goods were not "cotton rugs" but were articles made from velvets, etc. It did not consider or decide whether or not they were equally or more specifically provided for in paragraph 326 as "Jacquard figured upholstery goods."

The question is presented, therefore, which is the more specific or controlling herein, the provision for "Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber, any of the foregoing, in the piece or otherwise," under paragraph 258; or the provision for "manufactures or articles in any form, including such as are commonly known as bias dress facings or skirt bindings, made or cut from plushes, velvets, velveteens, corduroys, or other pile fabrics, composed of cotton or other vegetable fiber, except flax, hemp, or ramie," under paragraph 257. The argument proceeded upon the assumption that the claimed applicable provision of paragraph 257 provided only for "articles," whereas in measuring the relative specificity or applicability of the pertinent parts of the two paragraphs we must not overlook the fact that the term of paragraph 257 is expressly extended to "manufactures" as well as "articles" made or cut from plushes, etc. The competition is between the phrases and the whole thereof, and not segregated portions. It is not permissible to thus ignore a portion of the predication of "made or cut from."

Likewise the provisions of paragraph 258, relative to Jacquard figured-upholstery goods, are by the express terms of that paragraph extended to such "in the piece or otherwise."

The latitude of the latter provision was before this court, and received interpretation in a decision rendered since the board decision in this case—Carter & Son *v.* United States (6 Ct. Cust Appls., 253; T. D. 35475). In that case it was pointed out by this court that "the intent appears to be manifest to make the *use* to which a narrowly prescribed class of goods is devoted the test of its classification." The court further observed "these provisions must have been intended to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering to this particular and specific description."

The rule is not one resting in relative specificity so much as in the obvious intent of Congress to select goods of a specified class, here

designated by and according to their use, and rate them at a uniform rate of duty. The application of the rule is more in harmony with than at variance from the rule of specific description and does no violence to any well-recognized principle of tariff interpretation.

The principle and its application find parallel and precedent in Magone *v.* Heller (150 U. S., 70). Therein the Supreme Court held the phrase "substances expressly used for manure" prevailed over various concededly more specific designations of the chemical schedule of the tariff act of 1883, remarking:

Congress, for the promotion of agriculture, evidently intended that if a substance, *which might be described by the name* of an article subject to duty under Schedule A, was within the description, in the free list, of *use for fertilizing* the ground, it should be exempt from duty. * * * So, by force of the very clause in question, "all substances expressly used for manure" must be exempt from duty, even if they are chemical products and are scientifically classed as one kind of an article *the name of which appears in Schedule A or are spoken of in commerce by that name.* The agricultural use must prevail over the scientific or commercial nomenclature.

The principle of adjudication is not founded upon nor is it an exception to the fundamental rule of relative specificity in tariff interpretation. Indeed, it may well be questioned whether or not the two phrases here in question are capable of such relative admeasurement. But the ruling is founded upon the equally fundamental canon of construction that statutes must be so read as to give effect to and harmonize all words and phrases and parts thereof. Herein applied it effects the reading of the two phrases together in the order, to wit, "that all manufactures and articles made or cut from plushes, velvets, etc., and made of cotton, etc., shall pay 40 per cent duty; but, when such are Jacquard figured and upholstery goods and wholly or in chief value of cotton or any vegetable fiber, they shall pay but 35 per cent duty." Thus, Congress levies duties uniformly upon a large enumerated class of articles and saves to a specified use an intended and expressed preference in duty.

Not the least persuasive to the view that Congress intended the upholstery provision should be exhaustive as to goods of that use and obtain over such provisions as here asserted in paragraph 257, is the fact that while 257 is confined to those manufactures of cotton or other vegetable fiber "except flax, hemp, or ramie," the upholstery provision is extended to all such goods of whatever vegetable fiber. Its amplitude well marks and witnesses the obvious congressional purpose to make the provision exhaustitve.

This court in the Carter case, *supra,* reached its conclusion upon the record then before the court by adopting the common definition of the term "Jacquard figured upholstery goods" in the absence of any commercial testimony or understanding. There is no commercial testimony or understanding shown in this record which

excludes this merchandise from that term as used in paragraph 258. It may be well to add that, while the fixed line of distinction found in paragraph 326 of the tariff act of 1909, to wit, "weighing over six ounces per square yard," has been eliminated from the tariff act of 1913 and does not occur in paragraph 258 thereof, nevertheless, it seems pertinent here to say that should that eliminated phrase have been carried into the tariff act of 1913, so far as these goods are concerned, they would still fall within the classification of Jacquard figured upholstery goods.

These considerations likewise dispose of the claim of appellants that the merchandise is dutiable under the last and obviously less specific provision of paragraph 258. We hold the goods properly dutiable as Jacquard figured upholstery goods under that paragraph.

We are, therefore, of the opinion that the decision of the Board of General Appraisers should be, and it is, *reversed.*