UNITED STATES *v.* SNOW'S UNITED STATES SAMPLE EXPRESS CO. (No. 1827).[1]

1. CONSTRUCTION, PARAGRAPH 358, TARIFF ACT OF 1913.
    The provision of paragraph 358, tariff act of 1913, "all articles or fabrics * * * scalloped by hand or machinery * * * by whatever name known" is equivalent to an enumeration of every scalloped article by its name, and amounts to an eo nomine designation of scalloped madras muslin curtains.

2. CONSTRUCTION, PARAGRAPH 258, TARIFF ACT OF 1913.
    Regardless of relative specificity of the terms employed, the intention of Congress, in the enactment of paragraph 258, tariff act of 1913, was to make the language "curtains, * * * and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing in the piece or otherwise," inclusive of all goods falling therewithin and to exclude therefrom all other provisions of the act.

3. CONSTRUCTION—DESIGNATIONS EO NOMINE AND BY USE.
    Where Congress has provided for an article eo nomine in one paragraph of a tariff act, and in another paragraph of the same act employs language comprehensive of the other designation, and rates it for duty according to *use* or when used for a certain purpose, there is manifested a strong evidence of an intention upon the part of Congress to make that use controlling and to make the designation by use operate as an exception to the eo nomine designation.

4. SCALLOPED JACQUARD FIGURED MADRAS MUSLIN CURTAINS IN THE PIECE AND OTHERWISE AND MATERIALS THEREFOR.
    Scalloped Jacquard figured madras muslin curtains in the piece and otherwise and materials therefor are dutiable under paragraph 258, tariff act of 1913 ("curtains * * * and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing in the piece or otherwise") and not under paragraph 358 ("all articles or fabrics * * * scalloped by hand or machinery * * * by whatever name known").

United States Court of Customs Appeals, April 13, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8033 (T. D. 37032). [Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument Oct. 10, 1917, by Mr. Baldwin and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The issues here presented for decision are twofold:

(1) What constitutes "scalloped" as that word is used in paragraph 358, infra, of the tariff act of 1913?

[1] T. D. 37611 (34 Treas. Dec., 365).

In the view here taken, that question is unnecessary of decision and not decided. The appeal is controlled and decided by the other issue presented.

The importations are of madras muslin curtains in the piece and otherwise and materials therefor, scalloped, and were classified for duty by the collector at the port of New York under that portion of paragraph 358 of said act, reading:

358. * * * All articles or fabrics * * * scalloped by hand or machinery, any of the foregoing by whatever name known; * * *.

They are claimed properly dutiable by appellees, who were the importers, under the provisions of paragraph 258 of said act, providing:

258. Curtains, * * * and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing, in the piece or otherwise, * * *.

(2) The second issue, therefore, presented is, is the phrase "articles or fabrics * * * scalloped * * * by whatever name known" as used in paragraph 358 more specific than or *controlling over* the phrase in paragraph 258, "curtains, * * * and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; * * * in the piece or otherwise?"

No more apt expression of the possible force and effect of the quoted provision of paragraph 358 could probably be had than that the provision "all articles or fabrics * * * scalloped by hand or machinery, * *, * by whatever name known" is equivalent to an enumeration of every scalloped article by its name. Let us assume, then, that there is enumerated in paragraph 358 "madras muslin curtains." Is that provision controlling, where such are shown to be used as upholstery goods, as against the language "curtains, * * * and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing, in the piece or otherwise," as employed in paragraph 258?

Abstractly stated, the proposition also presents the question, May an eo nomine designation control over a designation by *use?*

The solution of the second issue in the case, therefore, presents for answer two questions of law, either of which being answered affirmatively determines this appeal:

(A) Is the stated provision of paragraph 258 more specific than *or intended by Congress to be controlling over* the provision quoted of paragraph 358?

(B) May the predication by Congress in paragraph 258 of dutiability according to *use* control over the aforesaid *assumed* eo nomine designations of paragraph 358?

(A) Regardless of relative specificity of the terms employed the intention of Congress in the enactment of paragraph 258 to make that

provision inclusive of all goods falling therewithin and to thereby exclude therefrom all other provisions of the act has previously been adjudicated by this court.

In Carter & Son *v.* United States (6 Ct. Cust. Appls., 253; T. D. 35475) there was before the court the relative competitive force of the provision of paragraph 358 for "nets" and "nettings" and this provision of paragraph 258. The presiding judge, for the court, after quoting the provision of paragraph 258, supra, stated:

> The question is therefore presented whether "Jacquard figured upholstery goods" is a designation which should prevail over the term "nets, nettings." We think it should. The intent appears to be manifest to make the use to which a narrowly prescribed class of goods is devoted the test of its classification. This makes the provision more narrow than the broad term "nets, nettings." In the first place, the articles provided for under this provision must be Jacquard figured; secondly, they must be upholstery; thirdly, they must be composed wholly or in chief value of cotton or other vegetable fiber, and "any of the foregoing in the piece or otherwise" is provided for. *Obviously these provisions must have been intended to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering to this particular and specific description.* It describes the goods in the piece, and restricts them to upholstery goods composed wholly or in chief value of cotton, Jacquard figured. We think this provision, which restricts its operation to goods whose chief use is as upholstery goods the precise and restricted character of such upholstery goods being exactly defined by the terms of the paragraph, brings within its provisions an article which might otherwise be appropriately termed nets or nettings. (Italics ours.)

It will be noted in passing that the provision for "nets" and "nettings" in paragraph 358 by specific eo nomine provision no more than accomplishes what is assumed herein is in effect accomplished by the general language "by whatever name known" as related to madras muslin curtains. So that it appears that the Carter case is a precise adjudication upon this point, a contrary conclusion having been reached by the court.

In Downing & Co. *v.* United States (6 Ct. Cust. Appls., 447; T. D. 35984) a review of the Carter case was asked of this court. In the Downing case the court reiterated its observations as to the inclusiveness of the particular provision of paragraph 258, saying:

> These provisions must have been intended to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering to this particular and specific description.

The court then further rested its opinion upon and quoted with approval the case of Magone *v.* Heller (150 U. S., 70), hereinafter considered.

In the Downing case, the same as here, was involved the same question. The goods had been assessed by the collector as Jacquard figured upholstery goods, and were claimed by the importers to be dutiable either as Jacquard figured manufactures of cotton under the latter provision of paragraph 258 or as countable cottons under

paragraphs 252 and 253 of the act.     Herein the court adhered to and approved the Carter case.

In United States *v.* Snow's United States Sample Express Co. (7 Ct. Cust. Appls., 312; T. D. 36872), the point was again urged upon this court as to the relative specificity of the eo nomine provisions of paragraph 358 and the provisions for Jacquard figured upholstery goods in paragraph 258.  The appeal was from an opinion by Howell, General Appraiser, and the opinion of this court was by the presiding judge.  The competing provision of paragraph 358 was for laces.  The board held that the words "by whatever name known" did not modify "laces."  The board rested its decision upon the Carter case of this court, saying:

The Assistant Attorney General contends, furthermore, that the reference in paragraph 358 to lace window curtains indicates that goods in the nature of curtain materials are within the contemplation of that paragraph.  If that argument is sound as to laces, it is equally sound as to the nettings which were passed upon in the Carter case, supra, for both laces and nettings of the character here in question are curtain materials, and the court held that it was the *use* of the nettings as curtain materials which took them out of the eo nomine provision for "nettings" and placed them within the provision for "Jacquard figured upholstery goods."

This court affirmed the decision of the board in toto.  While the board and this court held that the words "by whatever name known," as used in paragraph 358, did not modify the eo nomine expression "laces," that is all the more reason why the case is controlling of this.  Congress did not modify "laces" by the term "by whatever name known" because "laces" being itself an eo nomine expression that clause added thereto would have been surplusage. By the expression "laces" in the paragraph we have an eo nomine designation with all the dignity and effectiveness that would be accomplished were the term "madras muslin curtains" written in the statute.

The rule, therefore, seems stare decisis in this court that as to all goods answering to the specific description of this portion of paragraph 258, that language was intended to be inclusive and to exclude applicability of all other terms of the act.  That conclusion determines this case.

(B) One of the indices pointed out by the court as conducing to the conclusion that such was the intent of Congress was that dutiability therein was predicated upon *use.*

The rule is so well settled that where Congress has provided for an article eo nomine in one paragraph of a tariff act, and in another paragraph of the same act employs language comprehensive of the other designation, and rates it for duty according to *use* or when used for a certain purpose, that such is a strong, though we do not here say always a conclusive, evidence of an intention upon the part of Congress to make that use controlling, and states what may be

deemed an exception to the eo nomine provision to be read in connection therewith. The rule was early employed by the Supreme Court in Maillard *v.* Lawrence (16 How., 57 U. S., 251, 261). It found its full expression in Magone *v.* Heller (150 U. S., 70, 73.) Therein the subject of consideration was sulphate of potash. The tariff act of 1883 provided a duty upon sulphate of potash eo nomine. In another provision of that act it provided free entry for "manures, and all substances expressly used for manure." The proof was that the imported sulphate of potash was expressly used for manure. There was some discussion as to what brought a substance used for manure within the term "expressly," but it being found by the jury that the imported article was expressly so used the question of law for the court, it being found and conceded that the imported article fell within both provisions of the tariff law, was, which of these provisions was controlling in relative specificity of language. It was assumed that the article was provided for eo nomine as "sulphate of potash," and it was assumed that it was likewise provided for as a substance expressly *used* for manure. The principle of law employed by the court as controlling decision was as follows:

So, by force of the very clause in question, "all substances expressly used for manure," must be exempt from duty, even if they are chemical products, and are scientifically classed as one kind of an article *the name* of which appears in Schedule A, or are spoken of in commerce *by that name.* The agricultural *use must prevail over* the *scientific or commercial nomenclature.*

In Magone *v.* Wiederer (159 U. S., 555) the doctrine of chief use as often employed by the Supreme Court was vigorously attacked by the Solicitor General. That attack was of such merit and force that the Supreme Court took occasion to review the decisions upon the subject and reaffirmed the doctrine, which the court recited as originating with Maillard *v.* Lawrence and resulting in the doctrine of chief use as applicable to customs cases as announced in Magone *v.* Heller and other decisions, and held the rule stare decisis in that court.

In Chew Hing Lung *v.* Wise (176 U. S., 156, 161) the attention of the Supreme Court was again called to this doctrine. The court in that case was therein applying the doctrine of eo nomine designation in a tariff act as controlling. Therein the Supreme Court commented upon the case of Magone *v.* Heller (150 U. S., 70) as not within the doctrine of eo nomine designation but as constituting an exception thereto. The case is of particular application because it repeats and affirms the doctrine applied in Magone *v.* Heller, to wit, that a designation according to *use* will sometimes prevail over an eo nomine designation in a tariff act. The court said:

The case is not within the principle decided in Magone *v.* Heller (150 U. S., 70). There the contest was between a clause of the tariff act of 1883, providing for a duty upon sulphate of potash, eo nomine, and a clause exempting from duty "all substances expressly *used* for manure." It was held that a kind of sulphate of potash, the only common use of which, either by itself or in combination with other materials, was

for manure or in the manufacture thereof, was entitled to free entry, and was not subjected to duty as sulphate of potash. Whether the imported article was at the time of importation "expressly used for manure" in the sense defined in the opinion was held to be a question of fact, and that the court below erred in denying the collector's request to submit the case to the jury and in directing a verdict for the importer. The term "expressly used for manure," it was said, was equivalent to "used expressly" or "particularly" or "especially" for manure, and if it were found as a fact that the article was *so used* it was exempt from duty.

The rule, therefore, as declared and applied by the Supreme Court, is well settled, at least to the extent of being one of the indices of the congressional purpose.

However firmly the rule may be embodied in the judicial interpretation of the Supreme Court, it is not more so than by this court established and applied as a rule of construction in numerous cases.

In United States v. Boker & Co. (6 Ct. Cust. Appls., 243; T. D. 35472), in considering the words "agricultural implements" and their import, this court held that the phrase was a tariff designation according to use which would prevail over the eo nomine designation "shears" as related to such imported articles. The court therein announced the principle as applied in that decision and determinative thereof in language as follows:

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

That rule is so well established and of such frequent reiteration by the courts that its suggestion seems sufficient. This court affirmed and applied the rule as to "smokers' articles" in Knauth v. United States (1 Ct. Cust. Appls., 334; T. D. 31432); as to "wire rods," in Athenia Steel & Wire Co. v. United States (1 Ct. Cust. Appls., 494; T. D. 31528); applied it in Drakenfeld & Co. v. United States (2 Ct. Cust. Appls., 512; T. D. 32248); adopted it as to "jute-manufacturing machines" in United States v. Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004); and as to "philosophical and scientific instruments," etc., in United States v. Kastor & Bros. (6 Ct. Cust. Appls., 52; T. D. 35328). In fact, no principle is more firmly established in customs adjudication. Magone v. Wiederer (159 U. S., 555); Magone v. Heller (150 U. S., 70); Cadwalader v. Wanamaker (149 U. S., 532); Walker v. Seeberger (149 U. S., 541); Chew Hing Lung v. Wise (176 U. S., 156); Meyer v. Cadwalader (89 Fed., 963); Smith v. United States (93 Fed., 194).

In Brown & Co. v. United States (7 Ct. Cust. Appls., 309; T. D. 36871) the principle was again applied by this court, though in that case the competing provision was "manufactures of metal," as against "machinery for use in the manufacture of sugar."

In United States v. Ducommun Hardware Co. (7 Ct. Cust. Appls., 353; T. D. 36904) there was again before the court an importation of shears, which had been assessed under paragraph 128 of the tariff act of 1913 as "shears" eo nomine. It was shown that such were exclusively used for pruning in vineyards and orchards. The court held them dutiable under paragraph 391 as agricultural implements. Therein the court deduced, as it had previously decided, that the term "agricultural implements" was a designation for dutiable

purposes by Congress of implements according to use, and that, notwithstanding an eo nomine designation of the particular imported article in another provision of the law, such use as there employed controlled.    The court said:

The manifest purpose of the agricultural paragraph is to discriminate in favor of agriculture, and under the authority of the Boker case we think that, it being shown that these shears are not only chiefly but exclusively used in agriculture as therein defined, their classification falls thereunder.    The language of the paragraph is, after eo nomine mentioning certain articles, "and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts."    While these pruning shears are not specifically mentioned in the paragraph, they are upon the record agricultural implements.

That they are one kind of shears is also conceded, but it is apparent from common knowledge that there are many kinds of shears that are not agricultural implements in any sense, and, perhaps, that there are still others which, while they may be incidentally used for agricultural purposes, are not exclusively or chiefly devoted to that use.    As to such shears the eo nomine provisions of paragraph 128 would doubtless be applicable.    The rule of eo nomine application, as we have had occasion many times to remark, is but a rule of construction designed to aid in ascertaining the legislative intent, and while of high importance, is never controlling when it clearly appears that Congress intended a particular article to be otherwise classifiable, and we think this is such a case.

In United States *v.* Irwin & Co. (7 Ct. Cust. Appls., 360; T. D. 36906), the same doctrine was again applied, the court quoting, as authority, from United States *v.* Boker & Co. (6 Ct. Cust. Appls., 243; T. D. 35472), Magone *v.* Heller (150 U. S., 70), and Roger & Gallett et al. *v.* United States (7 Ct. Cust. Appls., 89; T. D. 36424). Perhaps the case of Roger & Gallett is as much as any typical of the application that *use* prevails over an eo nomine designation. Herein all the cases are reviewed and the general doctrine stated as follows:

This, however, is but a rule of construction devised and applied for the purpose of ascertaining the legislative intent, and while of great importance, can not be said to be controlling if it appears that Congress intended the classification to be determined by the *use* to which an article is devoted rather than by the eo nomine description itself.

The latest expression of the court upon the subject is United States *v.* Lorsch & Co. (8 Ct. Cust. Appls., 109; T. D. 37222), wherein the cases cited by this court and the Supreme Court are reviewed and the rule applied.

From the foregoing it is concluded—

(1) That this court has repeatedly held that the provisions of paragraph 258, relating to curtains and other Jacquard figured upholstery goods, were intended by Congress to be inclusive and to reach out into all other paragraphs of the act and make dutiable thereunder all goods falling within the narrow description of said portion of paragraph 258.    In the foregoing cited and quoted deci-

sions that intensive rule has by this court been applied as against the eo nomine provisions of paragraph 358. Carter & Son v. United States (6 Ct. Cust. Appls., 253; T. D. 35475); Downing & Co. v. United States (6 Ct. Cust. Appls., 447; T. D. 35984); United States v. Snow's United States Sample Express Co. (7 Ct. Cust. Appls., 312; T. D. 36872).

(2) That the rule of construction that use may evidence the intent of Congress and may control classification in import customs law, when made by Congress a test of dutiability, is a well settled canon of construction, long approved by the Supreme, this, and other courts. Cases supra.

In the construction of the part of paragraph 258 here in review, both these principles of construction have been applied, and the intent of Congress to rate for duty thereunder all goods answering to the narrow description therein defined, part of which is that they shall be devoted to upholstery uses, and to exclude such from paragraph 358, though named eo nomine therein, has so repeatedly been declared by this court that the question would seem stare decisis.

The judgment of the board should be *affirmed*.

## DISSENTING OPINION.

Smith, Judge: I regret that I can not concur with my associates in the decision reached in this case.

At the hearing before the board the importers contended, first, that the muslin curtains and muslins in the piece were not scalloped, and, second, that "Jacquard figured upholstery goods" was a more apt and specific designation of the importation than "articles or fabrics, * * * scalloped." The Board of General Appraisers overruled the first and sustained the second contention. The Government appealed.

I have carefully examined the samples and I agree with the board that they are scalloped. To scallop, as that term is generally understood, means to cut the edge of anything into a series of convex or rounded lobes. The edges of the curtains and piece goods under consideration have been shaped into a succession of segments—or, better said, projections—with curved ends which have been overstitched to prevent raveling. Edges so finished are surely scalloped, whatever else may be, and articles or fabrics having such edges are ornamented with scallops and are articles or fabrics scalloped, as that term is popularly understood.

It is argued, however, that in the tariff sense scalloped means something more than the shaping of an edge, and to bring an article or fabric to the condition of scalloped within the intention of paragraph 358 its edges must not only be cut into the form of scallops but finished with embroidery or ornamental stitching.

As the scalloped edges of the importation here involved are finished with an overlocking or binding stitch to prevent unravelling, and are not embroidered or ornamented in any way, the importers contend that although the edges of the merchandise have been cut into scallops the goods themselves can not be regarded as "scalloped" as that term is used in paragraph 358.   There is nothing in the paragraph which would warrant us in saying that the word "scalloped" as there employed was used in any other sense than that commonly assigned to it, and from that it results that the scalloping of an article or fabric does not necessarily require that the scalloped edges should be stitched with an embroidery or ornamental stitch, whatever else may be needed to finish or produce that particular kind of ornamental work.   In the trade and commerce of the country it may be that an article or fabric is not regarded as scalloped unless the scalloped edges are embroidered or ornamented with needlework, but as no evidence was adduced tending to establish any such trade or commercial understanding no cognizance can be taken of it and the word "scalloped" must be given its popular acceptation.   On the record presented by this appeal the muslins and curtains must therefore be regarded as scalloped.

Admittedly the fabrics are Jacquard figured upholstery goods, but as they are at the same time scalloped articles, it becomes necessary to determine whether that part of paragraph 258 enumerating "articles and fabrics, * * * scalloped, * * * by whatever name known" more specifically designates the merchandise than that part of paragraph 358 which enumerates "Jacquard figured upholstery goods."   In my opinion, the provision "all articles or fabrics * * * scalloped by hand or machinery, * * * by whatever name known" is equivalent to an enumeration of every scalloped article by its name, and consequently paragraph 358 must be construed as if it provided in terms for scalloped Jacquard figured muslin curtains and muslins in the piece.   Mason *v.* Robertson (139 U. S., 624, 627).   So construed, paragraph 358 must be regarded as a designation narrower and more specific than Jacquard figured upholstery goods.   We did say in Carter *v.* United States (6 Ct. Cust. Appls., 253; T. D. 35475) that the provision for Jacquard figured upholstery goods made use the test of classification and that that provision was intended to remove from the operation of other paragraphs of the tariff act goods answering that particular and specific description.

Accordingly, we held that Jacquard figured nets and nettings used for curtains, that is to say, for upholstery purposes, were more specifically provided for as "Jacquard figured upholstery goods" than by the provision for nets or nettings, which was broad enough to cover not only Jacquard figured nets or nettings for curtains but

other nets or nettings as well. That decision, however, can hardly be construed as holding that paragraph 258 must take precedence of paragraphs in the tariff act which so precisely and particularly designate or describe the goods as to distinguish them from all others. Had paragraph 358 provided for Jacquard figured nettings for curtains, clearly such a designation would have been less comprehensive than "nets, nettings," or "Jacquard figured upholstery goods," and certainly the Carter case, taking into consideration the law and the goods which the court there had under consideration, can not be fairly assumed to have held otherwise. So here, while I hold that a provision for "articles and fabrics * * * scalloped * * * by whatever name known" includes every scalloped article or fabric as fully as if it were designated by its name, I do not mean to say that that provision should prevail over a paragraph in which a scalloped article or fabric is designated by the name which distinguishes it from every other scalloped article.

The decision of the Board of General Appraisers, in my opinion, should be reversed and not affirmed.