(C. D. 992)

ADVANCE SOLVENTS & CHEMICAL CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 27, 1946)

*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.
*Lamb & Lerch* (*John G. Lerch* of counsel) *amici curiae*.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Presiding Judge:   This suit involves a cellulose compound imported from Germany under the trade name "Tylose."   It was

classified under paragraph 31 (b) (1) of the Tariff Act of 1930, which reads:'

Par. 31.

\*    \*    \*    \*    \*    \*    \*

(b) All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers), and all compounds, combinations, or mixtures of which any such compound is the component material of chief value:

> (1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, not made into finished or partly finished articles, 40 cents per pound    \*    \*    \*

Plaintiff claims it properly dutiable as glue (par. 41), or under the provision for "synthetic gums and resins" (par. 11), or as a dextrine substitute (par. 84). The paragraphs under which claim is made, so far as pertinent, read as follows:

Par. 41.    \*    \*    \*    gelatin, glue, glue size, and fish glue, not specially provided for    \*    \*    \*    casein glue    \*    \*    \*

Par. 11.    \*    \*    \*    synthetic gums and resins not specially provided for, 4 cents per pound and 30 per centum ad valorem;    \*    \*    \*

Par. 84.    \*    \*    \*    dextrine, not otherwise provided for, burnt starch or British gum, dextrine substitutes, and soluble or chemically treated starch, 2 cents per pound.

On motion of plaintiff's counsel, the record in *General Dyestuff Corp.* v. *United States* (protest 21454–K) was incorporated herein. That case, involving identical merchandise, was tried, submitted, and briefed, but was subsequently abandoned by plaintiff before decision was rendered. Claims for classification as glue or as synthetic gums or resins were made in that case but no claim was made therein for classification as a dextrine substitute. Counsel for both parties, as well as *amici curiae*, requested that the briefs filed in the incorporated case be considered herein, since the testimony in the present case and the briefs subsequently filed relate only to the claim for classification as a dextrine substitute.

In the incorporated case it was stipulated that Tylose is an ether of cellulose produced by the chemical process of methylating natural cellulose. As to this stipulation, counsel for plaintiff stated: "That may sound like stipulating away my case. I agree that this is a methylate of cellulose. I believe that the other two claims are more specific." Counsel further stated in the present case that Tylose and products essentially similar thereto are referred to variously as Tylose, celloresin, methyl cellulose, and methocel.

The merchandise in issue (represented by exhibit 1 in the incorporated record) is a dry, white, fibrous substance. It is not used in its imported form but is put in solutions of varying strength after importation.

In the incorporated case four witnesses testified for the plaintiff

and seven for the defendant. They were all well-qualified chemists with wide experience, both commercially and in the laboratory.

The testimony of plaintiff's witnesses was directed to proving that Tylose was a glue because of its adhesive properties; that it can be and frequently has been used as an adhesive; that it is a synthetic gum because it is water-soluble, or dispersible in water, causing a viscous solution; that it has the physical characteristics of a gum and can be and is used for many purposes for which certain natural gums are used. One witness concluded that Tylose was a gum, another that it was a glue, while two other witnesses stated that it was both a gum and a glue. It is not claimed, nor is it borne out by the record, that Tylose is bought or sold either as a synthetic gum or as a glue.

The testimony of defendant's witnesses was directed to differentiating Tylose or methyl cellulose from a glue or a synthetic gum. It endeavored to show that Tylose, while possessing some of the qualities of a gum, is not a synthetic gum, and, although admittedly possessing adhesive qualities, is not glue, contending that glue, as that term is used in paragraph 41, is confined to animal glue, and that all materials having adhesive qualities are not for that reason alone glue.

Defendant also sought to establish that the terms "glue" and "synthetic gum" both covered a much broader field than cellulose ether, and all of its witnesses agreed that Tylose was neither a glue nor a synthetic gum.

The Government further contends that the provision for cellulose compounds controls over the provision for glue and the provision for synthetic gums since the tariff history shows an intent to have paragraph 31 all-embracing in the cellulose field.

In our opinion, the usual rule that the more specific provision controls applies here. This is borne out by reference to the changes in the language of paragraph 31 of the Tariff Act of 1930 from the corresponding paragraph (31) in the act of 1922, which contained a proviso "That all such articles * * * whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph." This proviso was construed as referring only to articles made of cellulose compounds, as provided for in the second clause of the paragraph, and not to cellulose compounds or materials referred to in the first part of the paragraph. *Metz* v. *United States*, 46 Treas. Dec. 361, T. D. 40479 (G. A. 8891).

The act of 1930 (par. 31) does not contain this proviso and it was held that celluloid needles, being provided for in the needle paragraph (343), were dutiable thereunder and not classifiable as articles of cellulose. *Blankenstyn & Hennings* v. *United States*, 61 Treas. Dec. 865, T. D. 45606.

The first part of paragraph 31 in the act of 1922 providing for cellulose compounds contained the words "by whatever name known," which do not appear in the corresponding provision (par. 31) of the

act of 1930. The phrase "by whatever name known" is equivalent to an *eo nomine* provision. *Kotzin Bros. et al.* v. *United States*, 14 Ct. Cust. Appls. 99, T. D. 41589. This change of language would indicate a change of intent on the part of Congress.

The contention of defendant that the legislative history indicates an intent on the part of Congress "to bring all cellulose products into the cellulose paragraph" is, in our opinion, without merit. In fact, the legislative history seems to run counter to the Government's statement as to "an unusual anxiety on the part of Congress to get into paragraphs 30, 31, and 32 the whole cellulose family."

As to the plaintiff's contention that the provisions for glue and synthetic gum are *use* provisions and that, therefore, either of these designations is more specific than the provision by composition for cellulose ether, it has been held that a designation according to a specific use prevails over a competing description of general character without special limitation as to use or other qualification. *Drakenfeld* v. *United States*, 9 Ct. Cust. Appls. 124, T. D. 37979, and 2 ibid. 512, T. D. 32248.

It has been stated as a rule of construction that a designation by use will prevail over an *eo nomine* designation, and *United States* v. *Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611, has been cited as authority therefor.

However, our appellate court in *Altman* v. *United States*, 11 Ct. Cust. Appls. 174, T. D. 38960, said:

* * * That the court had no intention of establishing the revolutionary principle of tariff construction that a designation "by use" prevailed over every designation, however specific such a designation might be, is manifest from the majority opinion in United States *v.* Snow's United States Express Co., supra, in which the court was careful to state that a rating for duty according to use or when used for a certain purpose was *strong though not conclusive* evidence of the intention of Congress to make "use" controlling.

Also, in *United States* v. *Nippon*, 32 C. C. P. A. 164, C. A. D. 303, the court stated (p. 174):

„ * * * A designation by use, where there is some indication, either on its face or elsewhere, that Congress intended it to supersede an *eo nomine* designation, has always been held by the courts to overcome the *eo nomine* provision. But this is usually because of the fact that the term which is held to be a designation by use is couched in such language that the intent of Congress that it shall prevail over *eo nomine* provisions is clearly indicated. * * *

In *United States* v. *H. Reeve Angel & Co., Inc.*, 33 C. C. P. A. 114, C. A. D. 324, decided January 7, 1946, the court said:

While an *eo nomine* designation by use outweighs for classification purposes a merely descriptive provision, and therefore is strongly persuasive of the intent of Congress, nevertheless it cannot be applied to merchandise which it appears Congress has intended should be otherwise classified.

We do not understand the provisions for synthetic gums and glues here involved to be *use* provisions. But even were we so to consider

them, plaintiff's proof is only to the effect that Tylose is capable of use and has at times been used as an adhesive and that it has also been used for some of the purposes for which certain gums are used. Many things that are used as adhesives are not glue. This falls far short of meeting the burden plaintiff has assumed, namely, to establish by a fair preponderance of the evidence that this product is *chiefly* used as a glue or as a gum. Where classification is by use, the determinative fact is chief use. *United States* v. *Boker*, 6 Ct. Cust. Appls. 243, 245, T. D. 35472.

Plaintiff claims that Tylose is a synthetic gum rather than a synthetic resin and draws a distinction between the two. The Government, on the other hand, contends that Congress had in mind no clear distinction between a synthetic gum and a synthetic resin.

The provision for "synthetic gums and resins not specially provided for" appeared for the first time in the Tariff Act of 1930. This provision was enacted to provide for synthetic gums and resins other than those of coal-tar origin, which were already provided for (par. 27), as indicated in the report of the Committee on Ways and Means to accompany the proposed Tariff Act of 1930 (p. 12), and the report of the Senate Finance Committee of September 4, 1929. The latter report states (p. 4):

The only synthetic resins mentioned in the Act of 1922 are those of coal-tar origin provided for in paragraph 28.

A specific provision for synthetic gums and resins not specially provided for has been made in this paragraph in order to cover a number of new synthetic gums and resins recently developed and now assuming commercial importance.

In the publication of the United States Tariff Commission "Supplement to Tariff Information on Items in Tariff Bill of 1930 [H. R. 2667] Subject to Conference" the following appears under the heading "Synthetic Gums and Resins, N. S. P. F." (p. 20):

*Imports.*—Synthetic gums and resins are a recent development both in this country and abroad. Imports have been small. These synthetic resins are so new that they have not assumed a place of importance in international trade.

We are of opinion that Congress in inserting this provision had no definite distinction in mind between a synthetic gum and a synthetic resin. However, it may be that such a distinction exists, as would appear from the report of the Tariff Commission (No. 131) published in 1938 entitled "Synthetic Resins and Their Raw Materials" (appendix F, p. 161).

Defendant argues that the provision for glue in paragraph 41 is limited to glue of animal origin. In view of our decision herein, we do not find it necessary to pass upon this question.

This record would indicate that Tylose may be said to have some adhesive qualities. It also seems clear that it may be used for some purposes for which certain gums are used. There seems to be no

definite formula to determine what is a glue. No such formula was presented by any of the witnesses, by the definitions in the dictionaries, or in the authoritative works. Likewise, a gum or synthetic gum has not been clearly defined.

Witness Alexander for the defendant appeared to have exceptional qualifications in manufacturing glue, the use of gums and glues, buying and selling them, and as a writer and lecturer thereon. He stated that methyl cellulose is not a glue. The following testimony appears in the record (p. 117, incorporated case):

Q. It has an adhesive quality. Would you define it as a glue, in your opinion?
A. Positively not. Otherwise, anything that would stick any two things together would be called glue, which is ridiculous.

It has not been established by a preponderance of the evidence that Tylose is either a glue or a synthetic gum and these two claims must therefore be overruled.

As to the claim as a dextrine substitute (par. 84), plaintiff's witness testified that Tylose is used as a substitute for dextrine for some adhesive purposes, and that Tylose and dextrine can be used interchangeably in certain emulsions. This is contradicted by the five witnesses for the defendant, who testified that Tylose and dextrine are quite different in chemical behavior and physical properties, and that Tylose is not a substitute for dextrine and cannot be used interchangeably therewith.

The provision for dextrine substitutes appeared for the first time in the Tariff Act of 1909.

In *Morningstar* v. *United States* (159 Fed. 287 and T. D. 28578), decided November 23, 1907, the court held that a starch product known as white dextrine, which technically was neither dextrine nor starch but was commercially known as dextrine, was dutiable under the provision for "dextrine" in paragraph 286 of the Tariff Act of 1897 and not as "starch" under paragraph 285 of that act.

This case was called to the attention of Congress when the revision of the tariff was under consideration in "Notes on Tariff Revision" prepared by the Tariff Commission for use of the Committee on Ways and Means, House of Representatives, 1908 (p. 352).

Paragraph 286 of the Tariff Act of 1897, providing for "Dextrine, burnt starch, gum substitutes, or British gum," was incorporated in the tariff bill which passed the House and was reported to the Senate by the Committee on Finance. The words "dextrine substitutes" were inserted in the paragraph by an amendment in the Senate (Congressional Record, vol. 44, pt. 3, p. 2585). In conference the House receded from its disagreement to this amendment, and the paragraph as enacted in the Tariff Act of 1909 reads:

PAR. 297. Dextrine, dextrine substitutes, soluble starch or chemically treated starch, burnt starch, gum substitute, or British gum * * *

It appears that the provision for "dextrine substitutes" was intended to include therein modifications of starch such as the white dextrine involved in the *Morningstar* case, *supra*.

In the present tariff act, paragraph 83 is the starch paragraph, providing for potato and all other starches. Paragraph 84 provides .for dextrine, made from potato starch or potato flour; dextrine, not otherwise provided for; burnt starch or British gum; dextrine substitutes, and soluble or chemically treated starch. Thus starches are provided for in paragraph 83 and starches further processed, like dextrine and other starch products, are provided for in paragraph 84.

We are of opinion, from the legislative history on this subject and also under the doctrine of *ejusdem generis*, that paragraph 84 must be considered as limited to starches and modifications of starches, which would exclude Tylose from classification thereunder.

The claim under paragraph 84 as a dextrine substitute is overruled.

On this record we are of opinion that the classification by the collector as a compound of cellulose under paragraph 31 (b) (1) is correct. The evidence shows a great number of uses of Tylose as a glue, as a gum, and as a substitute for dextrine, rendering it virtually impossible, even were use the controlling factor, to determine on this record which, if any, is the chief use.

The plaintiff has failed to meet the burden it assumed of establishing that the collector's classification was erroneous and that any of its claims is correct. Therefore the protest must be overruled as to all claims.