BEFORE THE FIRST DIVISION, JULY 16, 1957

**No. 61048.**—M. B. I. Export & Import, Ltd., and Rohner Gehrig & Co., Inc. *v.* United States, protest 243657–K (New York).

WILSON, Judge: This is an action in which there is no substantial controversy concerning the material facts. The merchandise before us was invoiced as "accessories for precision horizontal boring and milling machine." The imported equipment was classified by the collector as "microscopes" under paragraph 228 (b) of the Tariff Act of 1930 and assessed with duty at 45 per centum ad valorem. The importer claims that the articles in question are parts of jig-boring machine tools and are properly dutiable under paragraph 372 of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, T. D. 48093, and the General Agreement on Tariffs and Trade, T. D. 51802. The statutes involved, insofar as they are here applicable, provide as follows:

Paragraph 228 (b), Tariff Act of 1930—

* * * microscopes * * * all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

Paragraph 372, Tariff Act of 1930, as modified by T. D. 48093—

| Tariff Act of 1930, paragraph | Description of articles | Rate of duty |
|---|---|---|
| 372 | Jig-boring machine tools_____ | 15% ad val. |
| * | *    *    *    * | *    * |

Paragraph 372, Tariff Act of 1930, as modified by T. D. 51802—

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 372 | Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part: <br> Textile pins_____ <br> Other_____ <br> *Provided,* That forged steel grinding balls shall not be entitled to any reduction in duty by virtue of any provision in this Agreement. | <br><br><br> 20% ad val. <br> The same rate of duty as the articles of which they are parts. |

It was stipulated between the parties in open court "that the articles in question here are in chief value of metal" (R. 3).

The only witness called in the case, William J. Neureither, vice president of the plaintiff corporation, testified in substance as follows: That he was familiar with the equipment now before the court and that the imported merchandise "consists of a graduated steel scale, plus an optical device to read, or to see the graduations on this scale, because of their inaccessible position, and the various mounting devices which are used to affix these components to the machine, which is the machine in question, the Dixi 60 horizontal optical jig borer"; that the imported equipment was ordered and made specifically for use as an attachment to or part of a jig-boring machine and has no other use; that the attachment in question aids the eye in seeing the graduations on the scale in two ways, first, by directing the light beams in such a way that part of the scale inaccessible to the naked eye becomes visible, and, secondly, by magnifying the graduations on the scale to make them more readily legible. The witness further testified that the machine to which the imported equipment was attached could be, and had been, used as a boring machine prior to the importation and attachment of the equipment in question, but that when thus used it was not a jig-boring machine tool, but was used for less accurate work than that made possible through the attachment of the precision equipment now under consideration. Mr. Neureither admitted that he had, on several occasions, referred to the imported equipment as microscopes and that he had checked and approved the advertising material, introduced in evidence as defendant's exhibits A–1 and A–2, in which the "Dixi 60" machine had been referred to as a "Precision Horizontal Jig Borer With Five Optical Microscopes" and also as "Optical microscopes for extremely accurate final settings * * *" in plaintiffs' exhibit 1. The witness also, during his testimony, on a few occasions referred to the instruments under consideration as microscopes.

The plaintiffs contend that the merchandise now before us is not a microscope, as that term is generally understood, for the reason that it is an essential part of a jig-boring machine tool and serves no useful purpose, except as part of such machine tool, which does not and cannot function as a jig-borer with precision accuracy, unless and until the imported precision equipment is attached. On the other hand, the Government argues that the imported merchandise is a microscope, citing the following definitions of a "microscope":

*Funk & Wagnalls New Standard Dictionary* of the English Language (1956), page 1571, defines "microscope" as—

> An instrument for assisting the eye in the vision of minute objects or features of objects that would be invisible without such aid.

*Webster's New International Dictionary* of the English Language 2nd Ed., Unabridged 1956, defines "microscope" as follows: (p. 1554)—

> An optical instrument consisting of a lens or combination of lenses for making enlarged or magnified images of minute objects.

Furthermore, Government counsel contends that the record shows that the imported equipment performs the function of a microscope, according to the foregoing definitions, because, according to the testimony, the precision equipment under consideration is used to magnify certain scales or readings and further points out that the witness, in his testimony and in the company advertising, called the articles under consideration microscopes. There appears to us to be considerable merit in the Government's contention, but the persuasiveness of this argument is somewhat offset by the fact that the uncontradicted testimony establishes that the precision equipment before us serves no useful purpose by itself but, in order to be utilized, must be attached to and become a part of the jig-boring machine which, through the attachment of the involved merchandise,

is converted into a precision jig-borin gmachine tool. We are of the opinion, furthermore, that the decisive issue of this case is not whether the equipment in question may be referred to and designated as a microscope, but whether the importation is more specifically provided for as a microscope under the provisions of paragraph 228 (b) of the Tariff Act of 1930 than under the terms of paragraph 372 of the act, as amended by T. D. 48093 and T. D. 51802.

Both parties refer to the case of *United States* v. *Lansen-Naeve Corp.*, 44 C. C. P. A. (Customs) 31, C. A. D. 632. However, that case is not controlling in the present situation. In the *Lansen-Naeve* case, *supra*, the court had under consideration, as competing statutes, paragraphs 344 and 372 of the Tariff Act of 1930, and the merchandise consisted of certain "cylindrical steel rolls, ground and polished, valued at over 25 cents per pound, and containing more than two-tenths of 1 per centum of chromium," which steel rolls constituted "parts of a rolling mill" and which rolling mill was a machine tool. The decision of the case turned upon the question as to which of the two competing provisions more accurately described the merchandise. The lower court, relying upon the case of *United States* v. *Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611, invoked the principle that "the use provision prevails over a descriptive or *eo nomine* provision," and, on that theory, "subordinated paragraph 344," providing for cylindrical steel rolls, ground and polished, to paragraph 372, providing for parts of machine tools, holding the latter to be one for a specific use, while the former is obviously descriptive, and held the involved merchandise properly dutiable, as claimed, as parts of machine tools.

The appellate court, in the *Lansen-Naeve* case, *supra*, agreed with the general principle of law invoked by the lower court and said "A well settled rule of specificity is that a use provision prevails over a descriptive or *eo nomine* provision," citing *United States* v. *Snow's United States Sample Express Co.*, *supra*, "unless there is a clearly expressed congressional intent to the contrary. *United States* v. *Pfaltz & Bauer (Inc.) et al.*, 16 Ct. Cust. Appls. 358, T. D. 43091; *United States* v. *John H. Faunce (Inc.) et al.*, 21 C. C. P. A. (Customs) 80 , T. D. 46395," the appellate court further stating:

This rule, however, cannot be applied to the instant situation. The narrow issue confronting this court is not whether a use provision should prevail over a descriptive provision, but whether a use provision *qualified by a not specially provided for clause* should prevail over a competing descriptive designation.

The court went on to hold that, inasmuch as the use provision of paragraph 372 was restricted by a not specially provided for clause, the ordinary rule did not apply and, therefore, held "In view of the absolute specificity of the descriptive provision, we must conclude that the steel rolls in question are specially provided for in paragraph 344 and should, therefore, be excluded from paragraph 372."

In the instant case, each of the competing paragraphs contains the not specially provided for clause, and the presence of said provision in both paragraphs renders the rule applied by our appellate court in the *Lansen-Naeve* case, *supra*, inapplicable in the determination of the present issue. We are, therefore, of the opinion that the general rule that a use provision prevails over a descriptive or an *eo nomine* provision is applicable in the case at bar. There would seem to be no doubt but that paragraph 372, as amended by the trade agreements hereinbefore referred to, providing for parts of jig-boring machine tools, must be construed as a use provision, while paragraph 228 (b) of the Tariff Act of 1930, providing for microscopes, is a descriptive or *eo nomine* provision. Since, therefore, it is definitely established that the articles in question are designed for use as parts of jig-boring machine tools and are imported for that specific purpose and have no other use, we hold they are more specifically provided for under paragraph 372, as modified, *supra*, as parts of jig-boring machine tools, as claimed, than under

paragraph 228 (b) of the act as microscopes, as classified. Accordingly, the protest claim that the involved articles are properly dutiable under paragraph 372 of the Tariff Act of 1930, as amended, at the rate of 15 per centum ad valorem as parts of jig-boring machine tools is sustained, and judgment will be entered accordingly.