AMERICAN TRADING CO. *v.* UNITED STATES (No. 99).[1]

1. HANDMADE PRINTING PAPER SUITABLE FOR BOOKS.
    The term "handmade" as applied to paper is precise, explicit, specific, and con·trolling, and since the handmade paper of the importation weighed 10 pounds to the ream, it was dutiable under paragraph 401, tariff act of 1897.—Benneche & Bro. *v.* United States (153 Fed. Rep., 861).

2. EFFECT OF DEPARTMENTAL PRACTICE. ·
    Even if· the evidence showed, as it does not, that the practice of the Treasury Department had been contrary to the ruling now made, the reason for invoking departmental practice as binding is not found here; the provisions of the statute under consideration are not of doubtful construction.

United States Court of Customs Appeals, October 16, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 20115 (T. D. 29429). ·
[Affirmed.]

*Comstock & Washburn* (*Albert H. Washburn* of· counsel) for appellant.
*D. Frank Lloyd,* ·Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in this case ·is concededly handmade paper weighing over 10 pounds to the ream. The appellant claims and the board found that it is also printing paper suitable for books. This is not denied by the United States.

The sole question is whether this paper is dutiable under paragraph 396 or under paragraph 401 of the tariff act of July 24, 1897. We insert here the material part of each paragraph. ·

· 396. Printing paper, unsized, sized or glued, suitable for books and newspapers, * * *.

401. Writing, letter, note, hand-made, drawing, ledger, bond, record, tablet, and typewriter paper, weighing not less than ten pounds and not more than fifteen pounds to the ream, * * * but if any such paper is ruled, bordered, embossed, printed, or decorated in any manner, it shall pay ten per centum ad valorem in addition * * *.

---

[1] Reported in T. D. 31972 (21 Treas. Dec., 433).

The collector and the Board of General Appraisers agreed that this paper was dutiable under paragraph 401.

It is clear that being printing paper suitable for books it is included within the provisions of paragraph 396, and also being handmade paper it is equally clear that it is within the provisions of paragraph 401. Under these circumstances, to use the language of the Supreme Court in Fink v. United States (170 U. S., 584)—

The question is, which, if either of the two (paragraphs), is so dominant in its control of the article in question as to exclude the operation of the other. The rule is that this, if possible, is to be determined by ascertaining whether one of the two paragraphs is more definite in its application to the article in question than the other.

The term "handmade" as applying to paper first appeared in the tariff act of 1897.

It is obvious, having regard to method of production, that all papers will fall within one of two classifications, namely, machine made or handmade, unless possibly it may be said that some papers are partially machine and partially hand made, but this question is not involved here, and it would seem that the handmade article must constitute but a small part of the entire paper product.

Congress is presumed to have had in mind that paper was divisible into these two classes and to have used the term "handmade" as applicable to all kinds of paper made by hand, unless when referring thereto some words of limitation, extension, or exclusion were also used in the same connection.

The term "handmade" as applied to paper is, we think, precise, explicit, specific, and controlling in this case. The word is used without any modifying language, except as to the weight per ream, and nothing else is found in the paragraph to suggest that any kind or class of handmade paper shall be exempted from its provisions.

Indeed, as was said by the Circuit Court of Appeals in Benneche & Bro. v United States (153 Fed. Rep., 861), Congress had in mind that the handmade paper might be suitable for printing or might be printed upon, because the same paragraph provides that if any such paper is printed in any manner it shall pay an additional rate of duty. But independent of this, we are clear that the words "handmade paper" more specifically describe the importation in question than does the term "printing paper, unsized, sized, or glued, suitable for books and newspapers" in paragraph 396. It is a specific designation from the standpoint of original manufacture.

No question of commercial designation is made in the case here. The paper is "handmade," that is, made by hand, and the record shows that it is made from a vegetable fiber obtained from the bark of certain trees in Japan. Whatever may be its uses, we think Congress intended, if it was of the weight described in paragraph 401, that it should pay the duty therein made chargeable upon paper made by hand.

While this conclusion seems to be the only natural one to be reached upon a reading of the two paragraphs in question, it is also supported

by authority. United States *v*. Davies, Turner & Co. (177 Fed. Rep., 371); Benneche & Bro. *v*. United States (153 Fed. Rep., 861); United States *v*. Seyd (158 Fed. Rep., 408).

We are not unmindful of the case of Miller, Sloane & Wright *v*. United States (128 Fed. Rep., 469), and the same case in 135 Federal Reporter, 349, which are some authority for the appellant's contention here. We think, however, that notwithstanding these cases the later ones to which we have first above referred have so far impaired their effect that if we felt bound to regard either as a precedent we should follow those first above cited. Independent of the authority, however, of any of these cases our conclusion is that the construction we have above indicated is the one which should be adopted in this case.

With reference to the appellant's claim as to the effect of the departmental practice in the construction of these paragraphs, as relates to handmade paper, it is sufficient to say, first, that no reason applies for its application here because we do not find the provisions of the statute under consideration of doubtful construction, and also because the facts in the case here show that there has been no such uniform, long continued, and uninterrupted construction of the statute favorable to the appellant's claim as would render it effective here.

The result is that the judgment of the Board of General Appraisers is *affirmed*.