## UNITED STATES *v*. CROSS CO. (No. 2012).[1]

1. EVIDENCE—BURDEN OF PROOF—COMMERCIAL DESIGNATION:
    It is not necessary for a protestant to show affirmatively commercial designation under the paragraph claimed.

2. NEEDLECASES.
    Leather folders and rolls and leather-covered wooden boxes, fitted with needles, some with thread also, and some with a small pair of scissors and a brass thimble also, known variously as "traveling companions," "necessaires," "sewing kits," or "sewing cases," were correctly classified by the Board of United States General Appraisers under paragraph 135, tariff act of 1913, as "needlecases or needlebooks furnished with assortments of needles or combinations of needles and other articles," rather than under paragraph 360 as manufactures of leather permanently fitted and furnished with traveling and similar sets or manufactures of leather, notwithstanding testimony that some of them were designed to be, and were, used by travelers. Cross *v*. United States (8 Ct. Cust. Appls., 196; T. D. 37413) distinguished.

United States Court of Customs Appeals, March 10, 1920.

APPEAL from Board of United States General Appraisers, Abstract 43382.

[Affirmed].

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

Submitted on record by appellee.

---

[1] T. D. 38335 (38 Treas. Dec., 227).

[Oral argument Feb. 25, 1920, by Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court: The two competing paragraphs to be considered in this case are, as quoted, 360 and 135:

360. Bags, baskets, belts, satchels, card cases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, made wholly of or in chief value of leather or parchment, not jewelry, and manufactures of leather or parchment, or of which leather or parchment is the component material of chief value, not specially provided for in this section, 30 per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining, luncheon, and similar sets, 35 per centum ad valorem.

135. Needles for knitting or sewing machines, latch needles, crochet needles, and tape needles, knitting and all other needles not specially provided for in this section, bodkins of metal, and needlecases or needlebooks furnished with assortments of needles or combinations of needles and other articles, 20 per centum ad valorem; but no articles other than the needles which are specifically named in this section shall be dutiable as needles unless having an eye and fitted and used for carrying a thread.

The board held the merchandise dutiable as needle cases or needle boxes, furnished with assortments of needles or combinations of needles and other articles, at 20 per cent ad valorem. The board, in Abstract 42445, described the goods with accuracy as follows:

Item 2476, as represented by Exhibit 1, is a small leather folder, 2½ inches long, 1¾ inches wide, and one-fourth inch thick. It is furnished with a detachable paper older containing 1 dozen needles and a small piece of celluloid around which are wound a few yards of black and white thread. Two small pieces of flannel are permanently stitched to the inside of the leather folder to hold the needles after they have been removed from the paper holder.

Item 2303, as represented by Exhibit 2, is a small wooden box, covered with leather, and divided into compartments for holding two spools of thread and the paper folder of needles with which the case is furnished. The box is 3 inches long, 1½ inches wide, and 1¼ inches deep, with a flat bottom and a curved top.

Item 2287, as represented by Exhibit 3, is a leather folder 5 inches long, 2½ inches wide, one-half inch thick, and is furnished with a large and varied assortment of needles, contained in detachable paper folders. Permanently attached to the case are three pieces of flannel for holding the needles when the latter are removed from the paper folders.

Item 2475, as represented by Exhibit 4, is a leather roll, containing several dozen needles of various sizes. In width the roll measures 3 inches; when it is opened it is 11 inches long and when closed its length is but 2 inches.

Item 2032, as represented by Exhibit 5, is a little larger than Exhibit 1 (item 2476), but otherwise similar thereto in construction. In addition to the paper folder containing needles, Exhibit 5 contains a small pair of scissors and a brass thimble.

The Government appeals, claiming that the merchandise represented by Exhibits 1, 2, and 5, is dutiable under paragraph 360, practically conceding that Exhibits 3 and 4 are dutiable as found by the board.

The claim is made that there was evidence tending to show commercial designation. Lillian Ramsgate, an employee of the importer, described the uses of these sets as follows:

Q. Do you know how these are used? * * *.—A. You put them in your purse.
Q. Is it for traveling?—A. For traveling; yes.
    By Mr. WEBSTER:
Q. Are they used in ladies' hand bags around the city; any place you may go?—A. Yes; in ladies' hand bags. It is very small.
Q. Would you say that that is especially designed for carrying in baggage, or traveling? * * *.—A. For putting in your hand bag. You couldn't use it at home; it is too small.
Q. I want you to distinguish between carrying around the city and going on a trip.— A. This has not enough needles to go on a trip with. Tnis is to put in a hand bag. This is the way we sell them.

She was inquired of as to Exhibit 4 and asked:

Q. How is that used?—A. As any other needlecase; to put in your bag or purse. This is also sold as a separate needlecase for household use. It is all needles in this case.
Q. That has plenty of needles to be used for traveling purposes, of course?—A. Or for home use. There are different sizes——
Q. Is that specially planned for use in a hand bag?—A. No; we sell that for any purpose.

Again, asked by Government's counsel:

Q. Don't you advertise those as traveling requisites?

she replied:

A. Not these; the larger ones.
Q. Are you sure about that?—A. I struck out the larger ones which we did use for that.

Then asked as to Exhibit No. 2:

Q. Is that designed for any special use?

she replied:

A. No; we do not consider that specially a traveling set.

A peculiar feature of the case is that the articles which seem not to be questioned bear precisely the same description as the articles which are contested, with the exception that in one case there are articles other than needles and the cases are somewhat smaller in size.

We would say that if it were necessary to show affirmatively a commercial designation of these articles as needlecases, there might be ground for the appeal; but we do not so construe the law. As indicated by the court in the case of United States v. Poirier (6 Ct. Cust. Appls., 239; T. D. 35470), the statute itself somewhat enlarges the term "needle cases" and describes what they are. In that case the court said:

While it might be said that the term "needlecases" standing alone implied an article the chief, if not the entire, use of which was to contain needles, the statute

·does not involve precisely that term, because it contemplates that the needlecases may contain not only assortments of needles and combinations thereof, but other articles as well, and one would naturally expect that some or all of the articles would. have relation to the use of needles, as do the articles' contained in the boxes here.

So that, independently of affirmative showing of commercial designation, these items all answer the description of needlecases, or needle boxes, furnished with assortments of needles or combinations of needles and other articles. And this is true if the term "other articles" is restricted in the most narrow sense to such as are ejusdem generis with the enumerated articles. We do not understand the record as showing a commercial designation for these articles which is inconsistent with the term "needlecases." It is true one of the witnesses testified that the articles are known as "traveling companion," "necessaire," and "sewing kit." Under examination by Government's counsel, Mr. Sander, one of the witnesses, testified as to articles 1, 2, and 5:

Q. What are they principally designed for, as far as your experience goes?—A. As far as I would judge it would be to travel; traveling companion they can be called as well, or sewing cases.

Q. Those are the names commonly employed—traveling companion, traveling set?—A. Or sewing case.

It is obvious that a needlecase, as defined by the statute, furnished with an assortment of needles or combination of needles and other articles, would very appropriately be called sewing cases. The statute is descriptive of what might with entire propriety be called a sewing case. It may be that in some quarters the trade may use the expression "needlecase" in a narrower sense. In fact its common use, as indicated by the court in the Poirier case, is in a narrower sense than that which the statute gives to it. In such case, the statute should control.

Counsel rely upon the language of the case of Cross *v.* United States (8 Ct. Cust. Appls., 196; T. D. 37413), as modifying or distinguishing the Poirier case. The so-called needlecases considered in·Cross *v.* United States, supra, contained not only needles and thread and articles used in the *operation* of sewing, but also *fabrics to be made up*, namely, tape, buttons, etc., and this fact distinguishes that case from the Poirier case and from the present as well.

There.was no error in holding all five of these articles dutiable as needle cases.

The decision is *affirmed.*