UNITED STATES *v.* AMERICAN TRADING CO. ET AL. (No. 3238)[1]

United States Court of Customs and Patent Appeals, January 13, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellees.

[Oral argument December 4, 1929, by Mr. Carter and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise the classification of which is involved in this appeal consists of certain handmade tissue paper. The collector classified it under paragraph 1304 of the Tariff Act of 1922:

PAR. 1304. Papers commonly known as tissue paper, stereotype paper, and copying paper, india and bible paper, condenser paper, carbon paper, coated or uncoated, bibulous paper, pottery paper, tissue paper for waxing, and all paper similar to any of the foregoing, not specially provided for, colored or uncolored, white or printed, weighing not over six pounds to the ream of four hundred and

---

[1] T. D. 43810.

eighty sheets on the basis of twenty by thirty inches, and whether in reams or any other form, 6 cents per pound and 15 per centum ad valorem; weighing over six pounds and less than ten pounds to the ream, 5 cents per pound and 15 per centum ad valorem; india and bible paper weighing ten pounds or more and less than eighteen pounds to the ream, 4 cents per pound and 15 per centum ad valorem; crêpe paper, 6 cents per pound and 15 per centum ad valorem: *Provided,* That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall pay a less rate of duty than that imposed upon the component paper of chief value of which such article is made.

Appellees made protest, claiming the merchandise to be properly classifiable under paragraph 1307:

PAR. 1307. Writing, letter, note, drawing, handmade paper and paper commercially known as handmade paper and machine handmade paper, japan paper and imitation japan paper by whatever name known, Bristol board of the kinds made on a Fourdrinier machine, and ledger, bond, record, tablet, typewriter, manifold, and onionskin and imitation onionskin paper, calendered or uncalendered, weighing seven pounds or over per ream, and paper similar to any of the foregoing, 3 cents per pound and 15 per centum ad valorem; but if any of the foregoing is ruled, bordered, embossed, printed, lined, or decorated in any manner, other than by lithographic process, it shall pay 10 per centum ad valorem in addition to the foregoing rates: *Provided,* That in computing the duty on such paper every one hundred and eighty-seven thousand square inches shall be taken to be a ream.

The Second Division of the Customs Court sustained the protest, judgment being entered accordingly, and the Government appeals to this court.

It appears from the record that the Government concedes the merchandise in issue to be handmade. It is of the character known as tissue paper.

Paragraph 1304 specifically includes "tissue" paper by name, but the word "handmade" does not appear therein. Paragraph 1307 specifically mentions "handmade" paper but does not use the word "tissue." The respective words "tissue" and "handmade" are used in the respective paragraphs as adjectives and are descriptive of the paper.

The question to be determined is, Which is the more specific, "tissue" or "handmade"; that is, which paragraph makes the more specific provision for this particular merchandise, 1304 or 1307?

The paper in issue is conceded to weigh less than 6 pounds per ream. The Government insists, therefore, that it is excluded from paragraph 1307 because it construes that paragraph to mean that only paper "weighing seven pounds or over per ream" is therein provided for. In other words, the Government takes the position that the handmade paper mentioned *eo nomine* in paragraph 1307, which falls within its dutiable rates, is only that handmade paper which weighs 7 pounds or more per ream, and, since the paper in issue, while handmade, weighs less than 6 pounds per ream, is also tissue

paper, and has an *eo nomine* designation in paragraph 1304, it must take the applicable rate of the latter paragraph. Appellees insist, and the Customs Court held, that the weight limitation contained in the words "weighing seven pounds or over per ream" of paragraph 1307 applies only to the "onionskin and imitation onionskin paper" therein named. The decision turns, therefore, upon the determination as to whether the weight limitation applies to all papers mentioned in the paragraph or only to the "onionskin and imitation onionskin paper."

Appellees point out that under the Tariff Acts of 1897, 1909, and 1913, wherever the issue lay between provisions for handmade paper and other papers specifically provided for, such as tissue paper, etc., the appellate courts have uniformly held the provision for handmade paper to be more specific, and numerous cases are cited, including *Benneche & Bro.* v. *United States,* 153 Fed. 861, *United States* v. *Seyd,* 158 Fed. 408, *United States* v. *Davies, Turner & Co.,* 177 Fed. 371, *American Trading Co.* v. *United States,* 2 Ct. Cust. Appls. 237.

The cited cases support appellees' contention upon the particular point made, but in no one of them does the question as to the application of weight limitation here involved appear.

Our attention is drawn to the rule as given in section 420 of Lewis' Sutherland Statutory Construction:

Relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent.

Accepting this as a proper rule to be applied, it must be remembered that the limiting words, "where no contrary intention appears," constitute a material part of it.

It is pointed out by appellees that in a number of instances where Congress fixed a limitation of some character when mentioning several articles, which limitation it desired to apply to each article rather than just to the last antecedent, it used the words "all the foregoing," and they argue that since these clarifying words are not used in paragraph 1307 it evidences an intent upon the part of Congress to apply the weight limitation only to the last class, "onionskin and imitation onionskin."

The words "all the foregoing" are very familiar in the tariff statutes, and their absence from paragraph 1307, taken in connection with the rule of construction quoted *supra,* enables appellees to make a very persuasive argument were it not for what seems to us to be a clear and unmistakable showing of congressional intent appearing in the legislative history of the paragraph.

We learn from this history that paragraph 1307 in the exact form in which it reads in the law was made to so read by certain amendments thereto adopted in the Senate while the measure was there under consideration. The House of Representatives having at first

refused to accept the amendments, along with many others, they became a subject of conference. The conferees of the two bodies agreed upon the language as the Senate had framed it and it became a part of the Conference Report when the measure reached that legislative stage. Accompanying this Conference Report when it was presented to the two bodies for final action was an explanation of the subject matter involved in which it was said:

The Senate Amendment limits the application of rates under Paragraph 1307 of the House Bill to such *papers* therein provided for as weigh 7 pounds or over per ream. * * * The House recedes.

Under this very clear and unambiguous statement accompanying the legislation, explaining and interpreting it, at the very hour of its final passage, we are unable to deduce any conclusion other than that it was the intent of Congress that such paper as is involved in this controversy should not be classified under paragraph 1307. We are unable to discover any facts or any legal authorities upon construction of the language of the law sufficient to overcome this inference of intent that we think must be drawn from the facts recited.

There is some discussion of the punctuation marks in the paragraph but we do not deem it essential to analyze them in this opinion, because we find nothing in their arrangement which negatives the intent we think Congress clearly had. In *Markell* v. *United States,* 16 Ct. Cust. Appls. 518, 520, this court, speaking through Judge BLAND, held that:

Marks of punctuation have their place in ascertaining the meaning of tariff paragraphs, but strict grammatical construction must yield to the manifest intention of Congress.

Also as bearing upon the rule of construction invoked by appellees here, the following from that same opinion is applicable:

The intention of the legislature, as indicated by the applicability of a rule of construction, must yield if the contrary intent is otherwise ascertained.

In support of both these principles as asserted and applied in the *Markell* case a number of authorities are cited in the opinion.

Some other questions are raised in the case but none which affects the matter of intent as derived from the legislative history or which, in the light of that history, would change our conclusion. The decision of the Customs Court makes no reference to the history, from which we assume that that court did not consider it. We have in many cases held legislative history to be a proper matter for consideration in aiding the court to arrive at the intent of Congress when the words of the statute are of doubtful meaning. *United States* v. *Stone & Downer,* 16 Ct. Cust. Appls. 82, T. D. 42732, and cases therein cited.

The judgment of the Customs Court is *reversed.*