(C. D. 1372)

MORILLA CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 27, 1951)

*Strauss & Hedges* and *Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The merchandise before the court in this case consists of handmade drawing paper. It was classified by the collector as handmade paper, and assessed with duty at the rate of 1½ cents per pound and 7½ per centum ad valorem, pursuant to the provision for such paper in paragraph 1407 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. In protesting against the collector's classification, plaintiff has claimed that the paper in question is drawing paper which, under the provisions of said paragraph 1407 (a), as modified by said trade agreement, is dutiable at the rate of 1 cent per pound and 5 per centum ad valorem.

The said paragraph 1407 (a), as modified, provides, insofar as here pertinent, as follows:

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 1407 (a)___ | Drawing paper, weighing eight pounds or over per ream and valued at 40 cents or more per pound: | |
| | Not ruled, bordered, embossed, printed, lined, or decorated in any manner. | 1¢ per lb. and 5% ad val. |
| | Ruled, bordered, embossed, printed, lined, or decorated in any manner, whether in the pulp or otherwise, other than by lithographic process. | 1¢ per lb. and 10% ad val. |
| 1407 (a)___ | Handmade paper, and paper commonly or commercially known as handmade or machine handmade paper; all the foregoing weighing eight pounds or over per ream: | |
| | Not ruled, bordered, embossed, printed, lined, or decorated in any manner. | 1½¢ per lb. and 7½% ad val. |
| | Ruled, bordered, embossed, printed, lined, or decorated in any manner, whether in the pulp or otherwise, other than by lithographic process. | 1½¢ per lb. and 12½% ad val. |

At the trial counsel for the respective parties entered into a stipulation of facts which is here quoted in full:

(1) The merchandise covered by the above entitled protest consists of drawing paper.

(2) Said paper is hand made.

(3) Said paper was classified as hand made paper and assessed with duty at 1½ cents per pound and 7½ per cent ad valorem under the provisions of Paragraph 1407 (a) Tariff Act of 1930 as amended by the General Agreement on Tariffs and Trade reported in T. D. 51802 and is claimed properly dutiable as drawing paper at 1 cent per pound and 5 per cent ad valorem under the same paragraph.

(4) Said paper weighs eight or more pounds per ream of 187,000 square inches and is valued at 40 cents or more per pound and is not ruled, bordered, embossed, printed, lined or decorated in any manner.

(5) Some drawing papers are hand made and other drawing papers are machine made.

(6) There are papers, other than drawing papers, which are hand made.

As the parties are agreed that the instant merchandise is both handmade paper, and drawing paper, of the weight and value specified in said trade agreement, it follows that either of the provisions hereinbefore quoted, in the absence of the other, would embrace said merchandise. Accordingly, it devolves upon this court to determine which of the two controverted provisions is the more specific.

Counsel for the plaintiff contends for the rate applicable to drawing paper upon the theory that although both "drawing paper" and

"handmade paper" are *eo nomine* designations of particular kinds of paper, the former, being a designation by use, takes precedence over the provision for handmade paper, a denomination which is descriptive only of the method of manufacture, citing *United States* v. *Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611. In the cited case, the court stated:

> The rule is so well settled that where Congress has provided for an article eo nomine in one paragraph of a tariff act, and in another paragraph of the same act employs language comprehensive of the other designation, and rates it for duty according to *use* or when used for a certain purpose, that such is a strong, though we do not here say always a conclusive, evidence of an intention upon the part of Congress to make that use controlling, and states what may be deemed an exception to the eo nomine provision to be read in connection therewith. * * * [Italics quoted.]

The principle of law relied upon by the plaintiff is, of course, a familiar one in customs jurisprudence, and is often resorted to in construing tariff legislation. But like any other rule of construction employed by the courts to aid them in ascertaining the sense and meaning of statutory language, its application is subservient to a manifest legislative intent to the contrary. As the court in *Pacific Vegetable Oil Co.* v. *United States*, 32 C. C. P. A. (Customs) 68, C. A. D. 287, phrased it, "the master rule of construction in the consideration of statutes is so to interpret them as to carry out the legislative intent, and if the legislative intent is contrary to *any* rule of construction such rule must yield to it." [Italics supplied.]

We think that this is a case for the application of the master rule; that is to say, that there are clear and convincing indications that the Congress in enacting the provision for handmade paper intended that provision to embrace all papers made by a hand process, notwithstanding any designation by use to the contrary.

The provision for handmade paper first appeared in our tariff laws in paragraph 401 of the Tariff Act of 1897. It has been repeated without change in every statute thereafter enacted, except that, since the act of 1909, it has been augmented to include "paper commercially known as handmade paper and machine handmade paper." In all of said statutes the enumeration of handmade paper is to be found in the same paragraph with, and dutiable at the same rate as, among others, such paper as writing, note, bond, and drawing paper. Accordingly, until the General Agreement on Tariffs and Trade, *supra*, drew a distinction between drawing paper and handmade paper in reducing the rate of duty thereon, no occasion had arisen for a judicial determination of the relative specificity of either designation.

Nevertheless, in the period since the Tariff Act of 1897 became a law, there have been several decisions construing the provision for

handmade paper in connection with kindred provisions in the paper schedule, which we deem pertinent. In the case of *United States* v. *Davies, Turner & Co.*, 177 Fed. 371, for example, it was held that handmade printing paper was more specifically provided for in the Tariff Act of 1897 as handmade paper than as printing paper suitable for books and newspapers.

That decision was followed in respect to handmade printing paper, suitable for books, in the case of *American Trading Co.* v. *United States*, 2 Ct. Cust. Appls. 237, T. D. 31972, wherein the court stated:

The term "handmade" as applying to paper first appeared in the tariff act of 1897.

It is obvious, having regard to method of production, that all papers will fall within one of two classifications, namely, machine made or handmade, unless possibly it may be said that some papers are partially machine and partially hand made, but this question is not involved here, and it would seem that the handmade article must constitute but a small part of the entire paper product.

Congress is presumed to have had in mind that paper was divisible into these two classes and to have used the term "handmade" as applicable to all kinds of paper made by hand, unless when referring thereto some words of limitation, extension, or exclusion were also used in the same connection.

The term "handmade" as applied to paper is, we think, precise, explicit, specific, and controlling in this case. The word is used without any modifying language, except as to the weight per ream, and nothing else is found in the paragraph to suggest that any kind or class of handmade paper shall be exempted from its provisions.

It does not appear with certainty from the court's opinion in the *American Trading Co.* case, *supra*, that the appellant there availed itself of the argument that the provision for "Printing paper, * * * suitable for books and newspapers, * * *" as a designation by use was more specific than the *eo nomine* descriptive enumeration of handmade paper, but the court's conclusions as to the scope and effect of the term "handmade" would clearly seem to override such a contention had it in fact been made.

Moreover, when in the case of *American Trading Co.* v. *United States*, 31 Treas. Dec. 348, T. D. 36767, it was contended with respect to handmade copying paper that the provision in paragraph 323 of the Tariff Act of 1913 for "Papers commonly known as copying paper" signified a distinct use and was therefore a narrower and more specific provision than that in paragraph 326 of said act for handmade paper, this court rejected the argument upon the authority of the decision of the Court of Customs Appeals in the case of *American Trading Co.* v. *United States, supra.*

The conclusions reached in both *American Trading Co.* cases, *supra*, were called to the attention of the Congress which was considering the Tariff Act of 1922, in the Summary of Tariff Information,

1920, prepared for the use of the Committee on Ways and Means, House of Representatives, in the following excerpt:

"*Handmade paper*" in this paragraph is more specific than "copying paper" in paragraph 323 and includes handmade copying papers (G. A. 7979, T. D. 36767, of 1916); also *handmade paper suitable for printing books and newspapers* (2 Ct. Cust. Appls., 237, of 1911). "*Ruled, bordered, embossed, printed, lined, or decorated in any manner*" includes writing paper with embossed parallel lines, some of which have color added to the embossing. (Abstract 24864, T. D. 31335, of 1911.) *Handmade tissue and bibulous papers* are dutiable under this paragraph rather than under paragraph 323. (G. A. 8168, T. D. 37623, of 1918.) \* \* \* [Italics quoted.]

In reenacting the provision for handmade paper without any change, as paragraph 1307 of the Tariff Act of 1922, the Congress must be deemed to have ratified the interpretation of the term in the prior statutes and to have approved the broad and inclusive construction placed upon it. *Columbia Malleable Castings Corp.* v. *United States,* 31 C. C. P. A. (Customs) 14, C. A. D. 243; *United States* v. *Bassichis Co. et al.,* 16 Ct. Cust. Appls. 410, T. D. 43133; and *E. E. Kelly & Co.* v. *United States,* 17 C. C. P. A. (Customs) 30, T. D. 43322. And that approval must likewise be attributed to the 71st Congress which passed the Tariff Act of 1930, without altering the language in question.

In Notes on Tariff Revision, 1908, prepared for the use of the Committee on Ways and Means, House of Representatives, under the heading "General Information," we find the following statement:

\* \* \* The making of paper by hand is practiced very little in these times, bank-note and certain kinds of drawing paper being about the only handmade product.

It seems evident to us that a legislature apprised of the fact that the only handmade paper products then being produced were bank-note and drawing paper would scarcely have written into the law a provision for handmade paper which could not cover handmade drawing paper, because drawing paper, a designation by use, was also provided for in the statute. We do not believe that by the provision for handmade paper in paragraph 326 of the Tariff Act of 1913 the Congress meant, or intended to mean, that it should refer solely to bank-note paper, which, according to the information then available to it, was the only handmade paper, other than drawing paper, then being produced. The very precise and inclusive phraseology employed, to wit, "paper commercially known as handmade paper and machine handmade paper," as well as "handmade paper" must negative any other conclusion.

There is no indication that subsequent legislatures purposed to vary the intent which we must necessarily ascribe to the Congress concerned with the enactment of the Tariff Act of 1913. Rather do we

find in the consistent adherence to the identical language a manifest desire to include within the provision in question all handmade paper, irrespective of any other statutory designation of a paper by its use.

Upon the foregoing considerations, we hold that the merchandise at bar, being handmade drawing paper, is more specifically provided for as "handmade paper" than as "drawing paper" and was properly dutiable as assessed. The claim in the protest before the court is, therefore, overruled.

Judgment will be entered accordingly.