(C. D. 1542)

M. Pressner & Co. *v.* United States

United States Customs Court, Second Division

(Decided July 15, 1953)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Arthur R. Martoccia*, special attorney), for the defendant.

Before LAWRENCE, FORD, and OLIVER, Judges;
OLIVER, C. J., concurring; FORD, J., dissenting

LAWRENCE, Judge: The proper dutiable classification of certain items consisting of sewing kits in chief value of metal, each containing six spools of cotton sewing thread, one thimble, and two hand sewing needles, encased in a round box with a mirror on the inside of the cover and a pincushion on the top of the cover, is the subject of this controversy. The box is approximately 2¾ inches in diameter and an inch deep, having a cardboard bottom and lining, the outer circumference of the box and the rim of the cover being substantially reinforced with metallic bands.

The collector of customs regarded the merchandise as entireties and classified it as "articles or wares not specially provided for," composed of metal, within the purview of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), and assessed duty thereon at the rate of 45 per centum ad valorem.

By its protest and amendment thereto, plaintiff claims in the alternative that the merchandise, as entireties, is properly dutiable at 40

per centum ad valorem as household utensils within the scope of paragraph 339 of said act (19 U. S. C. § 1001, par. 339); or that the component items should be separately classified as follows: The needles free of duty in paragraph 1724 of said act (19 U. S. C. § 1201, par. 1724); the thimbles at 40 per centum ad valorem in paragraph 339, *supra*; the cotton sewing thread at one-half of 1 cent per hundred yards, but not less than 20 nor more than 35 per centum ad valorem, in paragraph 902 of said act (19 U. S. C. § 1001, par. 902); and the container as the usual container, the value thereof to be prorated among the individual values of each item in the sewing kit.

The provision in paragraph 339, *supra*, invoked by plaintiff reads, so far as material here, as follows:

* * * household * * * utensils, * * * not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, * * *.

Inasmuch as reference will be made herein to paragraph 343 of said act (19 U. S. C. § 1001, par. 343), the portion thereof pertinent to this discussion is here set forth:

* * * needle cases or needle books furnished with assortments of needles or combinations of needles and other articles, * * *.

Two witnesses testified in the case, both of whom were called by the plaintiff. From their testimony, it appears that the needles, thread, and thimble contained in the sewing kits are used in the home and, after the contents of the case have served their purpose, the container is discarded.

Plaintiff in its brief states that "The case at bar is identical to the case of *Levin Bros.* v. *United States*, 11 Cust. Ct. page 74, C. D. 797, * * *." A comparison of the facts in the *Levin* case with those in the case at bar scarcely sustains the claim that they are "identical." It appears from the opinion of the court in the *Levin* case that the merchandise therein consisted of a cardboard box having a cellophane opening in the top and containing two needles, one thimble, and five cardboard cylinders upon which cotton thread had been wound and, because of its flimsy construction, the court was of the opinion that the box did not respond to the definition of a "case" within the meaning of paragraph 343 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 343), which provides for needlecases or needlebooks furnished with assortments of needles or combinations of needles with other articles.

In the case before us, however, the container of the needles, thimble, and thread, together with the mirror and pincushion, is of a substantial nature, being constructed in part of metal and, according to the evidence before us, it survives the use of its contents, whereas in the *Levin* case the contents were removed before they were put to use and the container destroyed.

Because of the fugitive nature of the container in the *Levin* case, this court held that the combined article was not dutiable as an entirety as a needlecase, but that the respective items were subject to separate classification, the needles being free of duty, as provided in paragraph 1724, *supra*; the thimbles as household utensils, provided for in paragraph 339, *supra*; and the thread as *eo nomine* provided for in paragraph 902, *supra*.

An authority more nearly in point, it seems to us, is the case of *United States* v. *Poirier & Lindeman*, 6 Ct. Cust. Appls. 239, T. D. 35470. The opinion of the court gives the following description of the merchandise:

> The typical exhibit in the case is a cylindrical box about 2½ inches long and a little less than 1 inch in diameter fitted at one end with a cap or cover. It contains a celluloid thimble and a hollow celluloid bobbin upon which thread is wound. The bobbin is also fitted with a cap, and within it two pins and two needles are inclosed. So made up it is concededly celluloid in chief value, the celluloid of course being a manufacture of pyroxylin.

But the court was of the opinion that the goods in that case were properly classifiable in paragraph 135 of the Tariff Act of 1913 as needlecases furnished with assortments of needles or combinations of needles with other articles. The Government contended that, while the cylindrical boxes with their contents might properly be designated as sewing sets, they were not needlecases within the meaning of said paragraph 135. The court answered this argument by saying, "There is no good reason why these boxes may not appropriately be called 'cases' and, as they are furnished in the manner specified in the paragraph, they become needlecases as that term is therein employed."

It may also be noted that in *United States* v. *Cross Co.*, 10 Ct. Cust. Appls. 58, T. D. 38335, small wooden boxes (among other things), 3 inches long, 1½ inches wide, and 1¾ inches deep, fitted with two spools of thread and a paper folder of needles, were held to be properly classified as needlecases within the provisions of paragraph 135 of the Tariff Act of 1913.

We think the facts of the *Poirier* case, *supra*, provide a close analogy to the facts in the present controversy; and, applying the reasoning of the court in that case, we are of the opinion that the importation before us is properly classifiable as needlecases or needlebooks furnished with assortments of needles or combinations of needles with other articles, in accordance with the terms of paragraph 343 of the Tariff Act of 1930. This claim, however, is not contained in the protest, doubtless because it prescribes the same rate of duty as was assessed herein by the collector of customs.

It is noted that defendant states in its brief that "The record shows that the articles at bar are chiefly used in the household"; that "The component material in chief value of the said articles is presumed to

be metal, they having been classified under paragraph 397"; and that "Therefore, their proper dutiable status should be under paragraph 339 at 40% ad valorem as household utensils."

Granting, *arguendo*, that the articles may be, in fact, household utensils, which is conceded by the defendant; that the provision for household utensils is a so-called "use provision"; and that a use provision has been held to prevail over certain *eo nomine* descriptions (*United States* v. *Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611), nevertheless, it is but a rule of construction which must yield to the intent of Congress otherwise expressed.

In the Tariff Act of 1909, Congress for the first time provided in paragraph 164 for "needle cases or needle books furnished with assortments of needles or combinations of needles and other articles," which articles were subjected to duty as entireties according to the component material of chief value therein. This provision was continued in paragraph 135 of the Tariff Act of 1913, except that a specific rate of duty was provided. The Tariff Acts of 1922 and 1930, in paragraph 343 thereof, repeated the quoted provision verbatim, the only change being in the rate of duty provided.

Throughout four tariff acts, therefore, Congress has specifically provided for "needle cases or needle books furnished with assortments of needles or combinations of needles and other articles." As indicated above, our appellate court in the *Poirier & Lindeman* case held that the merchandise there involved, as described, *supra*, answered the call of the provision in the Tariff Act of 1913 for "needle cases * * * furnished with assortments of needles or combinations of needles and other articles." With this interpretation of the statute, Congress in 1922 and again in 1930 reenacted the provision for needlecases without change. In paragraph 339 of the Tariff Act of 1922 Congress for the *first time* provided for household utensils, *not specially provided for*, clearly indicating that there might be some household utensils which were otherwise provided for, and we think that the repeated provision in the last four tariff acts for "needle cases or needle books furnished with assortments of needles or combinations of needles and other articles" is very persuasive of the intention of Congress not to invade that classification by the provision for household utensils. To hold otherwise would, we believe, render the provision for needlecases, paragraph 343, *supra*, practically inoperative.

The following cases lend support to the conclusion we have reached herein.

In *United States* v. *Pfaltz & Bauer (Inc.) et al.*, 16 Ct. Cust. Appls. 358, T. D. 43091, the question presented was whether a product known as "alsimin," in chief value of aluminum and used as an alloy in the manufacture of steel, was more specifically provided for in the pro-

vision reading "alloys of any kind in which aluminum is the component material of chief value, in crude form," than in the provision for "all alloys used in the manufacture of steel not specially provided for."

Upon this precise question, the court said:

> We think the provision for "alloys of any kind in which aluminum is the component material of chief value, in crude form," more aptly provides for the merchandise than "all alloys used in the manufacture of steel, *not specially provided for*," notwithstanding the application of the doctrine of use and giving it its full force and effect. It will be noted that in the latter provision are the words "not specially provided for." An alloy of which aluminum is the component material of chief value in crude form is specially provided for in paragraph 374 and the force of the doctrine of use can not overcome the clear indication of Congress to specially provide for aluminum alloys in paragraph 374. [Italics quoted.]

In *United States* v. *John H. Faunce (Inc.) et al.*, 21 C. C. P. A. (Customs) 80, T. D. 46395, certain Fresnel lenses, used chiefly in lighthouses and to some extent as course lights in aviation, which were classified within the provision for "illuminating articles of every description, * * * for use in connection with artificial illumination," were held to be properly dutiable as "lenses."

In arriving at its conclusion, the appellate court stated:

> The phrase "illuminating articles" may have a suggestion of use, but the legislature was not satisfied with this designation alone and further provided "used in connection with artificial illumination," which made it a very particularly described use. We think this provision should be regarded as quite specific when applied to any article which comes clearly within its scope, when the whole context of the same is considered. This fact, however, is no warrant for invading certain other specific paragraphs and drawing into the illuminating glassware paragraph articles which are only technically provided for therein, if provided for at all.

A recent case decided by this court from which no appeal was taken is *Morilla Co., Inc.* v. *United States*, 27 Cust. Ct. 210, C. D. 1372, wherein it was held that the *eo nomine* provision for "handmade paper" more specifically provides for handmade drawing paper than a use provision for "drawing paper." We there recognized the principle that a designation by use of a named article is more specific than an *eo nomine* or descriptive provision therefor. However, it was pointed out that it is a rule of construction which, though compelling, can not be applied if there is evidence of a legislative intent to the contrary. The facts in the *Morilla* case, *supra*, provided such an exception to the generally controlling effect of a designation by use.

Reference also is made to the case of *Davies Turner & Co.* v. *United States*, 27 Cust. Ct. 263, Abstract 55708. The importation there involved consisted of steel chains, used for the transmission of power, of not more than 2-inch pitch, containing more than three parts per pitch, and valued at not less than 40 cents per pound, which brought the articles clearly within the use provision in paragraph 329 of the Tariff

Act of 1930 (19 U. S. C. § 1001, par. 329), as modified by the trade agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, relied upon by plaintiff, for—

Chains of iron or steel, used for the transmission of power, of not more than two-inch pitch and containing more than three parts per pitch, and parts thereof, finished or unfinished, all the foregoing if valued at not less than 40 cents per pound * * *.

The merchandise likewise answered the call of the provision in paragraph 371 of said act (19 U. S. C. § 1001, par. 371) for parts of bicycles, as classified by the collector, in that the chains were ordered to specification for use on bicycles; were exclusively used in the assembly or manufacture of bicycles; and were essential and constituent parts of bicycles. This court, guided by legislative intent, overruled the plaintiff's claim and sustained the collector's classification. Upon appeal to the Court of Customs and Patent Appeals, the decision of the trial court was affirmed on March 11, 1953 (40 C. C. P. A. (Customs) 193, C. A. D. 517).

As in the cases above cited, so too in the present case, we are of the opinion that there is clear-cut evidence that it was the congressional intent that the context of paragraph 343, *supra*, wherein there is provision for "needle cases or needle books furnished with assortments of needles or combinations of needles and other articles" should not be invaded by the provision in paragraph 339, *supra*, for "household * * * utensils * * * not specially provided for" and that there here exists another exception to the general rule that a designation by use will ordinarily prevail over an *eo nomine* provision.

Upon the record in this case, for the reasons stated, and following the authorities cited, the claims in the protest are overruled without affirming the action of the collector.

Judgment will issue accordingly.

### CONCURRING OPINION

OLIVER, Chief Judge: The rule is well established that a "use" provision ordinarily prevails over an *eo nomine* designation. An exception to the application of that rule may arise when the so-called "use" provision contains, as in the present issue, the qualifying phrase, "not specially provided for." That phraseology in the general provision for "household utensils" in paragraph 339 indicates that Congress recognized the fact that some household utensils are specifically provided for elsewhere in the tariff act. It seems evident that Congress intended paragraph 339 to cover only such household utensils as are "not specially provided for."

The articles in question are needlecases furnished with combinations of needles and other articles, and, as such, are specifically provided for in paragraph 343. They are also household utensils. The provision

under consideration reads, "needle cases or needle books furnished with assortments of needles or combinations of needles and other articles." Congress did not limit the provision to the *eo nomine* designation, "needle cases," alone. On the contrary, the legislators enacted descriptive language, sufficiently broad to include a general class of articles.

It is a well settled principle that "The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent." (*United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078.) That intent is clearly evidenced by the descriptive language employed in the provision in paragraph 343, *supra*, which definitely covers the merchandise under consideration. The congressional intent being abundantly clear by the use of the statutory language of said paragraph 343, it follows that the articles in question, specifically provided for therein, are consequently excluded from the residuary or catchall provision for household utensils, not specially provided for, in paragraph 339.

I concur in the reasoning followed and the conclusion reached by Judge Lawrence.

### DISSENTING OPINION

FORD, Judge: I find myself unable to join in the conclusion reached by my associates in this case.

In its brief filed herein, counsel for the Government makes the following concession:

> The record shows that the articles at bar are chiefly used in the household. The component material in chief value of the said articles is presumed to be metal, they having been classified under paragraph 397. Therefore, their proper dutiable status should be under paragraph 339 at 40% ad valorem as household utensils.
>
>      *       *       *       *       *       *       *
>
> In view of the foregoing, it is the Government's contention that the protest should be sustained and the merchandise held properly dutiable at 40 per centum ad valorem under paragraph 339 of the Tariff Act of 1930 as household utensils.

The record herein fully supports the concession that the involved articles are chiefly used in the household. This case, therefore, presents only a question of law, to wit: Are the involved articles dutiable under paragraph 397, as articles or wares, not specially provided for, composed of metal, as classified by the collector, or are they dutiable under paragraph 339, as household utensils of the kind therein made dutiable at 40 per centum ad valorem? In view of the fact that the record establishes that the involved articles are needle-cases furnished with assortments of needles or combinations of needles and other articles, the question is also presented as to whether they are dutiable under paragraph 343, although that claim is not contained in the protest.

In support of its claim that the involved merchandise should be separately classified under the various paragraphs set out in the majority opinion, counsel for the plaintiff cites the case of *Levin Bros.* v. *United States,* 11 Cust. Ct. 74, C. D. 797. I cannot agree that the *Levin* case, *supra,* supports the plaintiff's contention herein. In the *Levin* case, the merchandise consisted of a cardboard box having a cellophane opening in the top and containing two needles, one thimble, and five cardboard cylinders upon which cotton thread was wound, but because of its flimsy construction the court held that the box did not respond to the definition of a "case" within the meaning of paragraph 343 of the Tariff Act of 1930, and, therefore, held the items of merchandise to be separately dutiable under the different paragraphs, as claimed by the plaintiff therein.

The difference in the facts in the *Levin* case and in the instant case distinguishes the two cases and renders inapplicable here the pronouncements made in the *Levin* case, *supra.*

In *United States* v. *Poirier & Lindeman,* 6 Ct. Cust. Appls. 239, T. D. 35470, the merchandise involved was described in the opinion as follows:

The typical exhibit in the case is a cylindrical box about 2½ inches long and a little less than 1 inch in diameter fitted at one end with a cap or cover. It contains a celluloid thimble and a hollow celluloid bobbin upon which thread is wound. The bobbin is also fitted with a cap, and within it two pins and two needles are inclosed. So made up it is concededly celluloid in chief value, the celluloid of course being a manufacture of pyroxylin.

In disposing of the case, the appellate court said:

* * * We agree with the board that the provision for needlecases in paragraph 135 is more specific than the provision for finished or partly finished articles of which collodion or any compound of pyroxylin is the component material of chief value in paragraph 25, because if the articles here are needlecases they are only one of the great variety of articles which may be composed in chief value of collodion or some compound of pyroxylin.

It is also observed that in *United States* v. *Cross Co.,* 10 Ct. Cust. Appls. 58, T. D. 38335, the appellate court held articles, 3 inches long, 1½ inches wide, and 1¾ inches deep, fitted with two spools of thread and a paper folder of needles, to be properly classifiable under paragraph 135 of the Tariff Act of 1913, as needlecases or needlebooks furnished with assortments of needles or combinations of needles and other articles. In that case, the competing paragraph provided for bags, baskets, belts, satchels, card cases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, permanently fitted and furnished with traveling, bottle, drinking, dining, luncheon, and similar sets.

Both the *Poirier* and *Cross* cases arose under the Tariff Act of 1913 and, naturally, the provision for needlecases was not drawn into competition with the language of paragraph 339 of the Tariff

Act of 1930, since the latter provision appeared for the first time as paragraph 339 of the Tariff Act of 1922. In view of the differences in the provisions drawn into competition in the *Poirier* and *Cross* cases and the provisions drawn into competition in the instant case, it is apparent that those decisions could not have any controlling effect in the present case.

In *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297, the appellate court quoted with approval the following definition of "Utensil" from Funk & Wagnalls New Standard Dictionary (1925):

Utensil. n.  Something that is used; a thing serving a useful purpose; formerly a thing of varied use; as, *utensils* of war or observation; now, more especially an implement or vessel for domestic or farming use; as, kitchen *utensils*.

In the same case, the appellate court definitely denominated paragraph 339 of the Tariff Act of 1922 as a "use" or "chief use" paragraph by the following language:

From the quoted definitions of the terms "hollow ware," "utensil," and "vessel," and from the language of the provisions of paragraphs 327 and 339, we are of opinion that the Congress had no intention of including in paragraph 339 articles designed and chiefly used for ornamental purposes.  On the contrary, we think that it was the purpose to include only such articles as are chiefly used for utilitarian purposes, such as might be denominated utensils, whether of hollow or flat ware.  This view is fortified somewhat by the history of the legislation.

\*  \*  \*  \*  \*  \*  \*

The provisions of paragraph 339 are far more comprehensive than those of prior tariff acts.  Nevertheless, there is no indication that the Congress intended to extend the scope of the paragraph to include articles other than those having the essential character of utensils.  Accordingly, we hold that only such articles as are designed and chiefly used for utilitarian purposes—utensils—are within the provisions for table, household, kitchen, and hospital utensils; and that only such articles as are in the form, generally, of vessels, and are of the character of utensils, designed and used chiefly for utilitarian purposes, are included within the provisions for hollow ware.

\*  \*  \*  \*  \*  \*  \*

Without intending to give expression to any opinion with regard to the omission of the word "similar" in paragraph 339, it may be said that the addition of the word "household" must have been intended to extend the operation of the paragraph.  Surely, there is no more reason for limiting the scope of the paragraph to such hollow and flat wares as are similar to unplated kitchen utensils than there is to limit the provision for household, hospital, and table utensils to such as are of the character of kitchen utensils.

In *United States* v. *The Friedlaender Co.*, 21 C. C. P. A. (Customs) 103, T. D. 46445, after quoting the findings of fact made by the trial court, the Court of Customs and Patent Appeals said:

It was then held that, under the facts as found, the case was controlled by the decision of this court in *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297, and that of the United States Customs Court in *Friedlaender Co.* v.

*United States,* T. D. 44796, 59 Treas. Dec. 860, "wherein paragraph 339 of the act of 1922 has been judicially construed as one predicated solely upon use."

In *Henry Pels & Co.* v. *United States,* 27 C. C. P. A. (Customs) 1, C. A. D. 51, the Court of Customs and Patent Appeals said:

It has been frequently held that where the doctrine of chief use is made the test of classification, it will prevail over an *eo nomine* provision, the effort being always to arrive at the legislative intent. *Factor* v. *United States,* 15 Ct. Cust. Appls. 401, T. D. 42570.

The Court of Customs and Patent Appeals, in the *Factor* case, *supra,* held as follows:

We are not unmindful of the *eo nomine* rule, to which our attention has been called. It has been many times held, however, that the *eo nomine* rule can not prevail as against the doctrine of chief use, where it is made the test of classification. *United States* v. *Hillier's Son Co.,* 14 Ct. Cust. Appls. 216, T. D. 41706, and cases cited.

Whether the Congress intended that articles of this character and description should be covered by the provision for "pencils" in paragraph 1451 need not here be determined, because, if it were so held, it would, nevertheless, be necessary for us to hold them more specifically provided for under paragraph 62 on account of the doctrine of chief use, which is made the test of their classification by the language of the paragraph.

As an indication of how well settled the rule of chief use is and its controlling effect when applicable, I quote the following from *United States* v. *Snow's United States Sample Express Co.,* 8 Ct. Cust. Appls. 351, T. D. 37611:

The rule is so well settled that where Congress has provided for an article eo nomine in one paragraph of a tariff act, and in another paragraph of the same act employs language comprehensive of the other designation, and rates it for duty according to *use* or when used for a certain purpose, that such is a strong, though we do not here say always a conclusive, evidence of an intention upon the part of Congress to make that use controlling, and states what may be deemed an exception to the eo nomine provision to be read in connection therewith. * * *

      \*         \*         \*         \*         \*         \*         \*

In *Magone* v. *Wiederer* (159 U. S., 555) the doctrine of chief use as often employed by the Supreme Court was vigorously attacked by the Solicitor General. That attack was of such merit and force that the Supreme Court took occasion to review the decisions upon the subject and reaffirmed the doctrine, which the court recited as originating with Maillard v. Lawrence and resulting in the doctrine of chief use as applicable to customs cases as announced in Magone v. Heller and other decisions, and held the rule stare decisis in that court.

In harmony with the above, I also quote the following from *United States* v. *Boker,* 6 Ct. Cust. Appls. 243, T. D. 35472:

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

That rule is so well established and of such frequent reiteration by the courts that its suggestion seems sufficient. This court affirmed and applied the rule as to "smokers' articles," in Knauth v. United States (1 Ct. Cust Appls., 334; T. D.

31432); as to "wire rods," in Athenia Steel & Wire Co. v. United States (1 Ct. Cust. Appls., 494; T. D. 31528); applied it in Drakenfeld & Co. v. United States (2 Ct. Cust. Appls., 512; T. D. 32248); adopted it as to "jute manufacturing machinery" in United States v. Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004); and as to "philosophical and scientific instruments," etc., in United States v. Kastor & Bros. (6 Ct. Cust. Appls., 52; T. D. 35323). In fact no principle is more firmly established in customs adjudication. Magone v. Wiederer (159 U. S., 555); Magone v. Heller (150 U. S., 70); Cadwalader v. Wanamaker (149 U. S., 532); Walker v. Seeberger (149 U. S., 541); Chew Hing Lung v. Wise (176 U. S., 156); Meyer v. Cadwalader (89 Fed., 963); Smith v. United States (93 Fed., 194).

In United States v. Hillier's Son Co., supra, the appellate court had under consideration the proper classification of certain resin which was eo nomine provided for in paragraph 1584 of the Tariff Act of 1922, and which was also provided for in paragraph 5 of the same act as a medicinal preparation by reason of the use to which it was put. In holding the merchandise to be properly classifiable under paragraph 5, supra, the appellate court employed the following language:

It is true that such preparation does not make it any less a resin, but it is, nevertheless, a medicinal preparation; that is, it has been prepared for use as a medicine.

We are of opinion that the merchandise upon the record of this case comes squarely within the decision in the McKesson case; and that it is a medicinal preparation and dutiable as such, unless the provision for "resins" contained in paragraph 1584 is a more specific designation.

\* \* \* \* \* \* \*

The provision for "all medicinal preparations" is equivalent to an enumeration of every medicinal preparation not otherwise specially provided for by name. Merck & Co. v. United States, 6 Ct. Cust. Appls. 41, 42, 43, T. D. 35315.

The resin involved here is used for no other than medicinal purposes. It is a medicinal preparation. And while it is provided for as a "resin" in paragraph 1584, it is more specifically provided for, we think, as a medicinal preparation in paragraph 5. Vandiver v. United States, 1 Ct. Cust. Appls. 194, T. D. 31219; United States v. Hempstead & Son, 3 Ct. Cust. Appls. 436, T. D. 33004; United States v. Boker & Co., 6 Ct. Cust. Appls. 243, T. D. 35472; United States v. Ducommun Hardware Co., 7 Ct. Cust. Appls. 353, T. D. 36904; United States v. Irwin & Co., 7 Ct. Cust. Appls. 360, T. D. 36906; United States v. Wiebusch & Hilger, 7 Ct. Cust. Appls. 364, T. D. 36907; United States v. Stiner & Son, 7 Ct. Cust. Appls. 485, T. D. 37105; Togasaki & Co. et al. v. United States, 12 Ct. Cust. Appls. 463, T. D. 40667.

If, as stated in Snow's United States Sample Express Co., supra, the rule is so well settled that where the Congress has provided for an article eo nomine in one paragraph, and in another paragraph of the same act employs language comprehensive of the other designation, and rates it for duty according to use, is strong evidence of an intention on the part of the Congress to make that use controlling, and states what may be deemed to be an exception to the eo nomine provision to be read in connection therewith, is to be given any consideration at all, it would appear to demand classification of the instant needlecases

under paragraph 339, even though they are *eo nomine* provided for in paragraph 343.

Likewise, if the quotation from the *Factor* case, *supra*, is to be given any effect at all, it would require classification of the instant needlecases under paragraph 339.

It is readily conceded that all household utensils are not provided for in paragraph 339 of the Tariff Act of 1930, but the holding of the majority that "* * * we think that the repeated provision in the last *four* tariff acts for 'needle cases or needle books furnished with assortments of needles or combinations of needles and other articles' is very persuasive of the intention of Congress not to invade that classification by the provision for household utensils," [italics mine] is not convincing. While it is true that substantially the same language employed in paragraph 343 of the Tariff Act of 1930 also appeared in three previous tariff acts, it is also a fact that the language of paragraph 339 of the Tariff Act of 1930 appeared for the first time in paragraph 339 of the Tariff Act of 1922.

The apprehension expressed by my associates that "To hold otherwise would, we believe, render the provision for needlecases, paragraph 343, *supra*, practically inoperative," is not supported by any facts in this record. So far as this record shows, the involved merchandise might be only one item out of one hundred where the merchandise was chiefly used in the household. Of course, if the merchandise is not chiefly used in the household, it is not a household utensil. It is also a matter of common knowledge, of which this court may take judicial notice, that the United States Army furnishes its enlisted personnel with sewing cases, running into the thousands annually. Such sewing cases are certainly not chiefly used in the household, and would, therefore, not be classified under paragraph 339.

Adverting to the concessions made by counsel for the Government, hereinbefore quoted, I wish to call attention to the decision in *Wheeler, Elder & Elder* v. *United States*, 11 Ct. Cust. Appls. 110, T. D. 38752, wherein was involved the proper classification of certain wood, lumber, or flooring. The following is quoted from that decision:

As to the flooring, the collector made the following entry upon his report in answer to the protest, viz: "I concede oak flooring, item 'S–61' is free." We think that this report, which seems to be consistent with the evidence, should be given the effect of setting aside the assessment upon the item in question. * * *

\*      \*      \*      \*      \*      \*      \*

The board's decision is accordingly affirmed except as to the flooring described in the invoice as "S–61," in which particular it is reversed.

It is not open to question that any concession which can be made by the collector as to his classification can also be made by the attorney representing the collector before this court. In this case, the collector, through his attorney, has conceded that the articles at bar are chiefly

used in the household; that the component material in chief value of said articles is metal; and that their proper dutiable status should be under paragraph 339 at 40 per centum ad valorem as household utensils. "* * * it is the Government's contention that the protest should be sustained and the merchandise held properly dutiable at 40 per centum ad valorem under paragraph 339 of the Tariff Act of 1930 as household utensils."

It is my view that this concession on the part of counsel representing the collector in this case, which seems to be consistent with the evidence, should be given the effect of setting aside the assessment upon the item in question. I see no difference in the collector conceding that oak flooring, item S–61, is free, in the *Wheeler* case, *supra*, and Government counsel, representing the collector in the instant case, conceding that the proper dutiable status of the involved merchandise should be under paragraph 339 at 40 per centum ad valorem as household utensils, that the protest should be sustained and the merchandise held properly dutiable at 40 per centum ad valorem under paragraph 339 of the Tariff Act of 1930 as household utensils.

For the reasons heretofore stated, and in line with the authorities quoted and cited, it is my considered opinion that the merchandise designated on the invoice as item 4273 should be held dutiable under paragraph 339 of the Tariff Act of 1930 at 40 per centum ad valorem, as claimed by the plaintiff and conceded by the defendant. I, therefore, dissent from the conclusion reached by the majority herein.